[Civ. No. 18094.   First Dist., Div. One.   Mar. 25, 1959.]

THOMAS SHANNON, Appellant, v. CIVIL SERVICE EM-
PLOYEES INSURANCE UNION (a Corporation), Re-
spondent.

Eugene H. O'Donnell for Appellant.

Harry S. Young, Leo H. Shapiro and V. G. Skinner for
Respondent.

WOOD (Fred B.), J.—This action presents the question whether a contract of December 31, 1951, designating plaintiff as agent of the defendant, was terminable at the will of either party.

On October 28, 1955, defendant gave plaintiff written notice of termination, effective December 31, 1955. The trial court held the contract was thus terminable.

The contract was upon a printed form, paragraph (6) of which read as follows: "(6) *This Agreement* supersedes all previous agreements, whether oral or written, between the Company and Agent and *may be terminated by either party at any time upon written notice to the other.*" (Emphasis added.)

To the left of the signature upon this printed form, these words were typed: "SUBJECT TO TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS CONTRACT."

Upon the reverse side, in typewriting over the signatures of the parties, the following appeared: "Thomas Shannon in accepting the agency agrees to act as organizer of the City and County Employees of San Francisco County, and further agrees to produce a minimum of insurance business as follows: (Through agents he may appoint) . . . [a sliding scale of minimum sales per year, increasing from $20,000 for 1951 to $200,000 for 1955] . . . $200,000 minimum to be maintained thereafter.

"*Should these minimum requirements not be met, said contract* as set forth on the face of this form *shall be subject to cancelation or re-negotiation.*" (Emphasis added.)

Plaintiff contends that these two clauses are "inconsistent," hence the typewritten "controls" the printed clause (Code Civ. Proc., § 1862); also, that they are "absolutely repugnant," requiring that the printed form be "disregarded" (Civ. Code, § 1651). He places an unwarranted construction upon the typewritten clause. He would interpret it as if it said that the "contract as set forth on the face of this form" shall be "subject to cancellation or re-negotiation" *only* ". . . should these minimum requirements not be met . . ." Such transposition of the several parts of this clause and the insertion of the word "only," would be a radical rewriting of it. No such radical treatment is called for.

The typewritten clause simply says that if the minimum requirements are not met the contract may be cancelled or renegotiated, presumably at the option of the company. It possibly limits the company to cancellation (without mone-

tary relief) as a remedy for failure of the agent to produce the stipulated volume of business. It does not deal with the duration of the contract as such. For example, it does not say that it shall continue so long as the agent lives and the company continues in business, subject to cancellation for non-performance.

Applicable here is the long established principle that a "contract for permanent employment . . . is only a contract for an indefinite period terminable at the will of either party . . . unless it is based upon some consideration other than the services to be rendered." (*Speegle v. Board of Fire Underwriters*, 29 Cal.2d 34, 39 [172 P.2d 867].) In our case, the trial judge, Honorable Edward Molkenbuhr, logically and convincingly expounded and applied this principle in these words: "It is not a contract the expiration or duration of which depends upon the expiration of a given time or upon the completion of a given undertaking or the happening of some event. Contracts for life or in perpetuity will only be upheld when the intention is clearly expressed in unequivocal terms, and courts are prone to hold against the theory that a contract infers a perpetuity of right or imposes a perpetuity of obligation, and they will only construe a contract to impose such an obligation when the written document itself compels the construction and none other. Contracts for life—and that is what is contended for here—are so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized.

"Because of the unusual nature of life or perpetual agreements, the length and permanence of the obligation undertaken, the various unforeseeable events and conditions which may be encountered on such a journey in the future, and the unpredictable effects upon the parties, special precautions have been decreed essential, both as to consideration and the terms of employment, in construing and enforcing the compact. The responsibility assumed and the obligations imposed will be neither created nor spelled out by mere inference when they are not clearly and unequivocally expressed in the contract itself."

This opinion, in which we concur, is further supported by the following authorities: *Ruinello v. Murray*, 36 Cal.2d 687, 689-690 [227 P.2d 251]; *Adkins v. Model Laundry Co.*, 92 Cal.App. 575, 581-582 [268 P. 939]; *Nissen v. Stoval-Wilcoxson Co.*, 120 Cal.App.2d 316, 319 [261 P.2d 249]; *Zimco Restaurants v. Bartenders Union*, 165 Cal.App.2d 235, 240

[331 P.2d 789] ; and cases collected in 35 A.L.R. 1432 and 135 A.L.R. 646.

Accordingly, we can and do read the typed and the printed clauses together, giving effect to each. The printed clause requires written notice of termination, which was given.

Plaintiff advances the further argument that the notice of termination was ineffective because by its terms it was expressly based upon the printed termination clause. That depends in part upon plaintiff's mistaken theory that the printed termination clause must be read out of the contract. Moreover, even if this theory of plaintiff's were correct, the conclusion that the notice was nugatory would not follow. The notice clearly evinces an intent to terminate the contractual relationship of the parties, which is all that is required for termination at will. No one was misled concerning the intent to terminate.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 24, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 20, 1959. Peters, J., did not participate therein.