[Civ. No. 1205. Fifth Dist. Dec. 15, 1970.]

SALYER GRAIN & MILLING CO., Plaintiff and Respondent, v. BILL HENSON et al., Defendants and Appellants.

494

**COUNSEL**

Frame & Courtney and Ted R. Frame for Defendants and Appellants.

McCormick, Barstow, Sheppard, Coyle & Best and Lawrence E. Wayte for Plaintiff and Respondent.

**OPINION**

**GINSBURG, J.**\*—The defendants, Daniel, a trucker, and Henson, his driver, appeal from a judgment of the trial court awarding damages to plaintiff for collision loss to its truck trailer and contents.

On June 9, 1963, Daniel entered into a written agreement (herein called the "original agreement") with plaintiff, a farmer. It provided that Daniel was to haul grain for plaintiff in semi-trailers to be furnished by plaintiff. Daniel was to load the trailers and transport them with his truck tractors. He was to be responsible for routine maintenance of the trailers, and plaintiff was to furnish tires and tubes and be responsible for major repairs.

The original agreement further specifically provided that Daniel was to maintain liability insurance and workmen's compensation insurance.[1] It was silent as to insurance against loss from damage to plaintiff's semi-trailers and cargo or resulting from loss of use of the trailers. Nor does it contain any language which expressly or impliedly exculpates Daniel from liability for damages caused by his or his employee's negligence.

---

\*Assigned by the Chairman of the Judicial Council.

[1] The exact language of the agreement in regard to insurance is as follows: "4. . . . DANIEL shall maintain adequate liability insurance in the amount of $500,000.00 PL, $1,000,000.00 PD, and appropriate Workmen's Compensation Insurance, and shall furnish to SALYER certificates evidencing his compliance with this requirement."

The term of this original agreement was one year. After it expired, the parties entered into another written agreement which extended the term for an additional year. This second contract, entitled "Contract Extension," contained a provision with regard to the ownership of the trailers, a statement incorporating a decision of the Public Utilities Commission authorizing the rate charged and, except for these additions, incorporated the terms of the original agreement by reference. The extension agreement, like the original agreement, was silent as to insurance against loss from damage to plaintiff's semi-trailers and cargo or resulting from loss of use of the trailers, and did not contain any language exculpating Daniel from liability arising from negligence.

On November 24, 1964, during the term of the extension agreement, Daniel's driver, Henson, was involved in an accident which damaged a trailer and its cargo. Plaintiff brought this action to recover his claimed resultant damages. At the trial it was stipulated that the accident was caused by Henson's negligence. Two issues were raised by defendants: the amount of damages sustained; and whether defendants were released by contract from liability for physical damage to the trailer caused by their negligence. No defense was raised affirmatively from liability for cargo loss, or that resulting from loss of use of the trailer.

The principal issue raised by defendants on this appeal involves the affirmative defense of release of liability by contract. At the trial defendants offered evidence of conversations which took place prior to the execution of the original agreement and again prior to the execution of the extension agreement. Timely objection to this proffered evidence was made by respondent's counsel, citing as the ground for the objection the parol evidence rule. The trial judge admitted the evidence conditionally and reserved his ruling.[2] Thereafter, in his memorandum of decision,

---

[2]The testimony so proffered was, in substance, as follows: Defendant Daniel's evidence was that he discussed responsibility for collision damage to the trailers with C. E. Salyer, plaintiff's president, before the original written agreement was executed, and that he was told "this is what our insurance is for"; that he again discussed the matter with Salyer approximately one year later, before the extension agreement was executed, and Salyer complained that the insurance on the trailers "was costing them too much money," but nevertheless agreed to continue it. One Osborn, an insurance agent, verified this later conversation and also testified that Salyer stated "that they would assume the responsibility of physical damage to the trailers."

Salyer, in answers to interrogatories, stated: ". . . it was agreed that . . . [plaintiff] would bear the cost of insuring the trailers." He further answered, "I do not recall Mr. Daniel mentioning the possibility 'of one of the drivers of his tractors being careless.' I do recall that Mr. Daniel, in the discussion of insurance, raised the question of collision damage to the trailers, and my response was that they were insured, and would continue to be insured, by . . . [plaintiff]."

It is not contended that there was any discussion or agreement concerning cargo loss or damage from loss of use of trailers.

he sustained the objection and excluded this evidence, stating that "said extrinsic evidence is not admissible in the case at bar."

Defendants contend that the parol evidence should have been received as proof of additional terms of the agreement. They further contend that it shows an agreement to insure, and that this agreement was for the mutual benefit of plaintiff and defendant Daniel, and that defendant Daniel was to be insured against any loss occurring through defendants' own negligence (citing *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.,* 189 Cal.App.2d 613 [11 Cal.Rptr. 634]; and *Davidson* v. *Welch,* 270 Cal.App.2d 220 [75 Cal.Rptr. 676]). Plaintiff contends that the written agreements amounted to an "integration"—a complete and final embodiment of the terms of the agreement of the parties; that parol evidence is hence inadmissible to add to it; and that there was no agreement in any event to make plaintiff responsible for defendants' negligence, or to release defendant Daniel therefrom.[3]

The basic rule regarding the receipt of extrinsic evidence in connection with a written agreement, as expressed in Civil Code section 1625, is: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Numerous cases have held this to be a rule of substantive law under which a writing setting forth the complete and unambiguous terms of an agreement becomes the contract of the parties and cannot be varied or supplemented by outside or inconsistent provisions. (*Estrada* v. *Darling-Crose Machine Co.,* 275 Cal.App.2d 681, 683 [80 Cal.Rptr. 266].)

In its actual application the rule is, however, limited to those cases where the parties intended the writing to be complete unto itself. In *Masterson* v. *Sine,* 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561], the court said: "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. [Citations.] When only part of the agreement is integrated, the same rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced to writing. [Citations.]

*"The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement."* (Italics added.)

---

[3]In his memorandum of decision, the trial judge stated that the issue of the effect of the excluded extrinsic evidence was moot in view of his ruling that it was inadmissible, but observed that even if it were admitted it would not have the effect of an agreement of indemnification, as defendants had contended.

■ Thus, when extrinsic evidence affecting a written agreement is proffered, two distinct issues are presented: first, the preliminary issue of the *admissibility* of the proffered evidence, then, if it is admitted, the second issue is the *effect* of the evidence on the written agreement.

To determine the preliminary issue of admissibility, it has been held that the court must consider all the facts and circumstances surrounding the instrument, including the writing and the offered evidence itself to determine the intention of the parties. ". . . rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing. . . .'" (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641].)

■ And where, as in the case at bar, it is contended that there was an additional or collateral agreement,[4] the court must examine the collateral agreement itself in determining whether the parties intended their writing to serve as the exclusive embodiment of their agreement. "Any such collateral agreement itself must be examined . . . to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing. Circumstances at the time of the writing may also aid in the determination of such integration." (*Masterson* v. *Sine, supra,* 68 Cal.2d at p. 226.)

The procedure to accomplish this examination under the provisions of the Evidence Code is set forth in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at page 40, footnote 7: "When objection is made to any particular item of evidence offered to prove the intention of the parties, the trial court may not yet be in a position to determine whether in the light of all of the offered evidence, the item

---

[4] In considering the instant case, we must distinguish it from those cases in which there is an ambiguity in the instrument, or a clause susceptible of more than one interpretation (e.g., *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512 [67 Cal.Rptr. 761, 439 P.2d 889]; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]; *Estrada* v. *Darling-Crose Machine Co., supra,* 275 Cal.App.2d 681); and from those in which the court found that there was what it deemed to be a *necessary* missing term (e.g., *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union,* 69 Cal.2d 713 [73 Cal.Rptr. 213, 447 P.2d 325]; *American Ind. Sales Corp.* v. *Airscope, Inc.,* 44 Cal.2d 393 [282 P.2d 504, 49 A.L.R.2d 1344]). Here, we have a purported agreement *separate from or additional to* the original agreement; the basic question to be here determined is, therefore, whether the written agreement was intended at the time of its execution by the parties to be the whole of their agreement, integrating all previous agreements and negotiations.

objected to will turn out to be admissible as tending to prove a meaning of which the language of the instrument is reasonably susceptible or inadmissible as tending to prove a meaning of which the language is not reasonably susceptible. *In such case the court may admit the evidence conditionally by either reserving its ruling on the objection or by admitting the evidence subject to a motion to strike.* (See Evid. Code, § 403.)" (Italics' added.)

■ A finding that the written agreement was intended to be a complete and integrated expression of the intention of the parties would necessarily be implied by a ruling excluding extrinsic evidence; no specific written finding of fact was required.[5]

■ Clearly, the determination of the trial judge as to the intent of the parties is entitled to no less weight than other determinations of fact made by him. ". . . it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof." (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].) This "substantial evidence test" has been frequently applied by reviewing courts in parol evidence cases; in *Smith* v. *Arthur D. Little, Inc.,* 276 Cal.App.2d 391, at page 401 [81 Cal.Rptr. 140], the court said: "Where a trier of fact has weighed parol evidence in order to interpret a contract, the resulting interpretation is a determination of fact, which is binding upon the appellate court so long as there is substantial evidence in support thereof."[6]

■ In the instant case the trial judge properly followed the procedure set forth in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra;* he received the extrinsic evidence conditionally and later ruled on its admissibility after reviewing the written instrument, the parol evidence,

---

[5]Evidence Code section 402, subdivision (c), provides: "A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

[6]See also *Skone* v. *Quanco Farms,* 261 Cal.App.2d 237, at page 243 [68 Cal.Rptr. 26], where the court said: "Thus, the trial court could reasonably believe that respondent considered himself bound by his oral agreement, and we cannot disturb its decision on this issue. It is elementary that we do not weigh or resolve conflicts in the evidence or judge the credibility of witnesses."

And, in *Hynum* v. *First Nat. Bank of San Diego,* 267 Cal.App.2d 540, at page 542 [73 Cal.Rptr. 507], the court said, after a review of the writing and the extrinsic evidence: "The findings of the Court are supported by substantial evidence in the record."

and the facts and circumstances surrounding the transaction to determine if the written instrument was intended to be an integrated one. Applying the principles of review hereinabove enunciated, we look to the record to see if the evidence was sufficient to support the trial judge's finding.

An examination of the record does indeed reveal substantial evidence to support the finding of the trial court that the written extension agreement was an integrated one. The parties to the negotiations dealt at arm's length and both were experienced businessmen who may be presumed to know the effect of written agreements; respondent's president headed a large-scale farming operation, and appellant Daniel had been then engaged in the trucking business for 11 years, and operated six trucks.[7] The alleged oral agreements were made in conversations which took place before the making of the written original agreement and again before the making of the written extension agreement; thus, the parties had not just one but two opportunities to include any further oral agreements in the written document had they intended such conversations to constitute binding agreements. The original agreement, including all terms regarding insurance, was filed with the Public Utilities Commission and used as the basis for a rate approval; risk of loss is a matter which must have been known by the parties to affect the fixing of rates, yet they did not include any mention of it in the written agreement so filed. No evidence was received or offered concerning insurance against loss of *cargo* or loss of use of the trailers by reason of a collision, yet these were risks as obvious to the parties as risk of loss through damage to the trailers; it would seem illogical to make an agreement concerning one and not the others.

We note also that the clause of the extension agreement incorporating the original agreement states: "4. Except as herein modified, the terms and conditions of said contract shall remain unaltered and unchanged and are hereby ratified, confirmed, and approved." This language may reasonably be construed as indicating an absence of antecedent or intervening collateral agreements.[8]

One standard for determining the admissibility of collateral oral agreements permits proof of such an alleged agreement if it is one which

---

[7]Cf. *Masterson* v. *Sine, supra,* 68 Cal.2d at page 228, where the court said: "There is nothing in the record to indicate that the parties to this family transaction, through experience in land transactions or otherwise, had any warning of the disadvantages of failing to put the whole agreement in the deed."

[8]Cf. *Masterson* v. *Sine, supra,* 68 Cal.2d at page 225, where the court said the crucial issue is whether the parties intended their writing to serve as the exclusive embodiment of their agreement, and goes on to say, at pages 225-226: "The instrument itself may help to resolve that issue. It may state, for example, that 'there are no previous understandings or agreements not contained in the writing,' and thus express the parties' 'intention to nullify antecedent understandings or agreements.'"

might *naturally* be made as a separate agreement by parties situated as were those executing the written agreement.[9] In the instant case, an agreement regarding collision insurance is not one which would *naturally* have been made in a collateral oral agreement and not included in the written agreements. The written agreements carefully provided for liability insurance in specified amounts and for workmen's compensation insurance, and for the furnishing of certificates in connection therewith (fn. 1, *supra*), Insurance was thus a subject treated in detail in the written agreements. It would have been *unnatural* for the parties to have had a separate agreement with regard to one particular type of insurance and one particular risk of loss, omitting other obvious risks such as cargo insurance.

For all of the foregoing reasons, the ruling of the trial judge denying the admission of extrinsic evidence after duly considering such proffered evidence and the facts and circumstances surrounding it is held to have been based upon substantial evidence, and no error resulted therefrom.

■ Appellant Daniel also contends that the trial court erred in awarding damages for loss of use of the trailer while it was being repaired, claiming that the amount awarded should be the rental value of the replacement vehicle rather than the damaged vehicle. Respondent adduced evidence of the rental value of the damaged trailer at the trial, without objection. The evidence was proper and the damages were correctly computed (*Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840, 844 [147 P.2d 558]; *Malinson* v. *Black,* 83 Cal.App.2d 375, 381 [188 P.2d 788]).

The judgment is affirmed.

Gargano, Acting P. J., and Coakley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1971. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.

---

[9]Restatement of Contracts, section 240(1) (b); see also *Masterson* v. *Sine, supra,* 68 Cal.2d at pages 227-229; *Skone* v. *Quanco Farms, supra,* 261 Cal.App.2d at pages 243 and 244.