[Civ. No. 29910. First Dist., Div. One. Oct. 16, 1972.]

ELWIN T. BRAWTHEN, Plaintiff and Appellant, v.
H & R BLOCK, INC., et al., Defendants and Respondents.

## COUNSEL

Wilson, Mosher & Martin, Wilson, Mosher & Sonsini and John W. Clark for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, Charles H. Brock and H. R. Lloyd, Jr., for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—Plaintiff Elwin T. Brawthen has appealed from an order granting a nonsuit made during the course of a jury trial in an action against defendant H & R Block, Inc. (hereafter H & R Block). ▉ Such an order is appealable. (*Wulfjen* v. *Dolton* (1944) 24 Cal.2d 878, 879-880 [151 P.2d 840].)

We discuss the evidence in a light most favorable to the plaintiff against whom the nonsuit was ordered. (See *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84].)

H & R Block is a corporation engaged in the nationwide business of preparing state and federal income tax returns. In 1961, in Minneapolis, Brawthen was invited to join the organization as one of its "managers." In an ensuing discussion with the corporation's president he was told "that as long as I did a good job in the area that the contract was mine." A form of "Articles of Employment" prepared by H & R Block was tendered Brawthen. It provided that the "Employee's share of the net profits shall be 50% of such net profits for each fiscal year ending December 31. . . ."

It also stated: "This agreement shall be for a period of two years from the above date, and thereafter shall automatically renew from year to year unless either party gives written notice of termination ninety days prior to renewal date. . . ." Upon observing the latter provision, Mrs. Brawthen, who was present, asked, "What guarantee do we have that after we go out to Bakersfield and develop the business over a period of years, what guarantee do we have that we just won't be terminated?" The president answered: "The word of Henry and Richard Bloch [*sic*]. We have never terminated a contract. We do not terminate contracts. Anybody who does a good job in the area will never be terminated. We do not change contracts. When someone—when a contract is changed, someone gets hurt and we do not want anybody to be hurt." He further "pointed out that normally in an operation the first year is a losing operation and the second year even may be, and it is a question of three to four years before you can begin to realize anything and an income that is sufficient for an individual to live on the year 'round."

Brawthen signed the "Articles of Employment." He sold a business in which he was engaged, and moved to California.

By agreement the "city" was changed to San Mateo where Brawthen commenced his employment, apparently around the end of the year 1962. Thereafter he requested permission to open offices in Redwood City, Palo Alto and Mountain View. The permission was granted and he was told by H & R Block that those cities would be included in the existing contract.

In 1967 H & R Block circulated among its many "city" managers a printed sheet assuring them that: "No manager need worry about his contract if he is doing a good, honorable conscientious job to best serve the public and following the principles outlined in the [company's] Policy & Procedure Book."

Brawthen's share of the "net profits" during the years of his employment was as follows: 1963—$1,672; 1964—$5,025; 1965—$12,660; 1966—$15,500; 1967—$28,000; 1968—$34,700; through the "tax season" of 1969—$54,390.

Around January 1968 Brawthen was asked by H & R Block to sign a new contract which would substantially reduce the rate of his compensation. He refused to sign the document. In October 1968 he was advised by H & R Block that his "employment as our branch manager will not be renewed for the term commencing April 25, 1969."

Brawthen commenced the instant action seeking, among other things, damages for wrongful termination of his employment.

It will be seen that the trial court was, as now we are, concerned with the "parol evidence" rule and its several satellite concepts.

In California the parol evidence rule is codified in Civil Code section 1625, and Code of Civil Procedure section 1856.

Civil Code section 1625 provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Code of Civil Procedure section 1856 states: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the term of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

Code of Civil Procedure section 1860, referred to in section 1856, provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Related Civil Code sections follow:

Section 1636: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Section 1638: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

Section 1639: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title."

Section 1647: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Section 1649: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

Following these statutes it was long held that the intent of contracting parties must be determined from their written agreement alone, and that *only* where the intent as shown by the written agreement was uncertain or ambiguous, could extrinsic evidence be resorted to. (See *Laux* v. *Freed* (1960) 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873]; *Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 134 [48 P.2d 13]; *Joerger* v. *Pacific Gas & Electric Co.* (1929) 207 Cal. 8, 32 [276 P. 1017]; *Ruiz* v. *Norton* (1854) 4 Cal. 355, 358; *Palos Verdes Corp.* v. *Housing Authority* (1962) 202 Cal.App.2d 827, 836 [21 Cal.Rptr. 225]; *Schmidt* v. *Macco Construction Co.* (1953) 119 Cal.App.2d 717, 730 [260 P.2d 230]; *Eastman* v. *Piper* (1924) 68 Cal.App. 554, 561 [229 P. 1002].) This principle has commonly been referred to as the "face' of the document" rule.

But more recently two additional concepts have developed which concern the effect of oral conversations or understandings related, but extrinsic, to a written agreement which is unambiguous on its face. These principles are widely misunderstood. Since both are to some extent relied upon by the parties to this appeal, we discuss them at some length.

■ The first concept was elaborated upon in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]. That decision holds that extrinsic evidence is admissible to prove a meaning to which the language of a contract is reasonably susceptible, even though on its "four corners" the instrument appears to the court to be clear and unambiguous. But this rule must be restricted to its stated bounds; it does no more than allow extrinsic evidence of the parties' understanding and intended meaning of the *words used in their written agreement*. While it allows parol evidence for this purpose, it is unconcerned with extrinsic collateral agreements.

In the instant case it may not be said, nor do we understand Brawthen to contend, that the parties *understood* the contract's *words* authorizing each party "to give written notice of termination ninety days prior to renewal date," to mean that the contract would not be terminated while he was doing a "good job." Indeed, it was because the parties, or at least the Brawthens, did *not* so understand, that oral assurance of the contract's continuation while a good job was being done was insisted upon, and given. It becomes patent that we are not here concerned with the rule expounded in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.*, *supra*.

The second principle is discussed at length in *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]. It is this concept which appears to be critical to the appeal before us.

*Masterson* v. *Sine* repudiated the older "face of the document" rule to which we have adverted. It distinguished between "integrated" and "unintegrated" written agreements. ■ Where parties have agreed that a written instrument is the exclusive and final embodiment of their contract, then the written contract is integrated, and parol evidence is inadmissible to alter or enlarge its terms. But where they have *not* so agreed, then the writing is unintegrated, and extrinsic or parol evidence will ordinarily be admitted in aid of establishing the *complete* agreement.

■ Whether or not the writing constitutes an integrated agreement is a question of law for the court. (*Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co.* (1970) 10 Cal.App.3d 206, 215-216 [88 Cal.Rptr. 858]; *Salyer Grain & Milling Co.* v. *Henson* (1970) 13 Cal.App.3d 493, 499 [91 Cal.Rptr. 847].) The language of the writing is an important consideration, particularly where it recites that all understandings of the parties are contained therein; these are the so-called words of "integration" (*Masterson* v. *Sine, supra,* 68 Cal.2d at pp. 225-226). But the determination may not be made from the writing alone (*Masterson* v. *Sine, supra,* p. 226; *Salyer Grain & Milling Co.* v. *Henson, supra,* p. 499); the proffered collateral parol agreement itself must be considered, as well as the circumstances surrounding the transaction, and its subject matter, nature and object. (*Masterson* v. *Sine, supra,* p. 226; *Salyer Grain & Milling Co.* v. *Henson, supra,* p. 499.)

*Masterson* v. *Sine, supra,* points out that evidence of the "oral collateral agreements should be excluded only when the fact finder is likely to be misled." This permits a limited weighing of the evidence by the trial court for the purpose of keeping "incredible" evidence from the jury. Parol proof is to be allowed of " 'such an agreement as might *naturally* be made as a separate agreement by parties situated as were the parties to the written contract.' " But it is to be disallowed if " 'the additional terms are such that, if agreed upon, they would *certainly* have been included in the document in the view of the court, . . .' " (*Masterson* v. *Sine,* p. 228; and see *Birsner* v. *Bolles* (1971) 20 Cal.App.3d 635, 637-638 [97 Cal. Rptr. 846].)

It will be seen that the trial court is invested with a degree of discretion in ruling upon the admissibility of such extrinsic evidence.

Where as in the instant case the trial is by jury, the proceedings on the integration issue will of course be heard out of their presence. Since the

trial court's discretion is involved, each party would be well advised to present available evidence on the issue. ■ If integration of the writing is not established as a matter of law, and the parol evidence is admitted, then the related questions of credibility of witnesses, and the parties' intent, ordinarily become questions of fact for the jury.[1] (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 444 [116 P.2d 62]; *Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co., supra,* 10 Cal.App.3d 206, 216; *Regus* v. *Gladstone Holmes, Inc.* (1962) 207 Cal.App.2d 872, 877 [25 Cal.Rptr. 25]; *Schmidt* v. *Macco Construction Co.* (1953) *supra,* 119 Cal.App.2d 717, 734.)

■ The trial court in granting H & R Block's motion for nonsuit seemed to give effect to the repudiated "face of the document" test in applying the parol evidence rule. It held that the written "Articles of Employment" were "unambiguous" and that therefore, as a matter of law, they superseded all oral negotiations and agreements of the parties. This, of course, was error.

There remains for our consideration the question, whether on the record before us it may be said as a matter of law that the motion for nonsuit should nevertheless have been granted.

From the evidence the jury reasonably could have concluded that Brawthen did "a good job in the area" for which he was employed. Further, it could reasonably have been concluded that the employment agreement was supported by consideration other than the services to be rendered by Brawthen (see *Shannon* v. *Civil Service Emp. Ins. Union* (1959) 169 Cal.App.2d 79, 81-82 [337 P.2d 136]), thus establishing a cause of action for damages. (See *Bondi* v. *Jewels by Edwar, Ltd.* (1968) 267 Cal.App.2d 672, 676-677 [73 Cal.Rptr. 494]; *Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal.App.2d 426, 427, 432 [41 Cal.Rptr. 819]; *Kanner* v. *National Phoenix Industries, Inc.* (1962) 203 Cal.App.2d 757, 760-761 [21 Cal.Rptr. 857]; *Millsap* v. *National Funding Corp.* (1943) 57 Cal.App.2d 772, 775-777 [135 P.2d 407]; *Seifert* v. *Arnold Bros., Inc.* (1934) 138 Cal.App. 324 [31 P.2d 1059]; *Fibreboard Products, Inc.* v. *Townsend* (9th Cir. 1953) 202 F.2d 180, 182-183.)

We note that the "Articles of Employment" contained no "words of integration"; nor did they expressly contradict the oral agreement. They

---

[1]The *interpretation* of a contract, written or oral, is always a question of law for the court. There may be circumstances, not existent here, where the interpretation of one or more contractual versions permitted by the evidence is at issue. The question as to which was the contract of the parties would be one of fact, while the interpretation (if necessary) of that contract would remain a question of law. (See *O'Connor* v. *West Sacramento Co.* (1922) 189 Cal. 7, 18 [207 P. 527]; *Sloan* v. *Stearns* (1955) 137 Cal.App.2d 289, 301 [290 P.2d 382]; *Coats* v. *General Motors Corp.* (1934) 3 Cal.App.2d 340, 355 [39 P.2d 838].)

consisted of a fully utilized two-page singlespaced mimeographed form with blank spaces provided for the date, the "managers" name, and the subject "city." It was not readily adaptable to erasure, or new matter, or changes in its text. Knowing that the first few years would be unproductive of profit, it seems probable that the Brawthens mentioned the written agreement's uncertain termination provision. In light of the form of the contract and the relationship of the Brawthens to the prospective employer, it seems not extraordinary for them to accept the "word of Henry and Richard Bloch" who had "never terminated a contract." Indeed, the court in *Masterson* v. *Sine, supra,* 68 Cal.2d 222, placed considerable significance on the "formalized structure" of the instrument there in question, a deed, stating that the difficulty of accommodating that document "to the insertion of collateral agreements makes it less likely that all the terms of such an agreement were included. . . ." (P. 228.) And here the circulation of the printed sheet in 1967 stating that no manager who does a good job "need worry about his contract" adds to the probability of the "credibility" of the disputed parol evidence.

The above considerations impel us to declare that it may reasonably be said that the purported oral understanding was " 'such an agreement as might *naturally* be made as a separate agreement by parties situated as were the parties to the written contract.' " It may not reasonably be said that the oral stipulation, if in fact agreed upon, " 'would *certainly* have been included in the document. . . .' " (See *Masterson* v. *Sine, supra,* 68 Cal.2d at pp. 227-228.) We point out, however, that our conclusions·are based upon evidence produced at the trial by Brawthen alone. On a new trial the court's decision on the same issue will be based upon all of the evidence there to be adduced.

For the reasons stated the trial court erred in granting H & R Block's motion for a nonsuit.

Reversed.

Molinari, P. J., and Kongsgaard, J.,* concurred.

A petition for a rehearing was denied November 15, 1972, and respondents' petition for a hearing by the Supreme Court was denied December 13, 1972.

---

*Assigned by the Chairman of the Judicial Council.