[Civ. No. 35449. First Dist., Div. Three. Oct. 15, 1975.]

ELWIN T. BRAWTHEN, Plaintiff and Respondent, v.
H & R BLOCK, INC., Defendant and Appellant.

142

## COUNSEL

Hoge, Fenton, Jones & Appel and Charles H. Brock for Defendant and Appellant.

Wilson, Mosher & Sonsini, John W. Clark and James H. Pooley for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), Acting P. J.**—Appellant H & R Block, Inc., appeals from a judgment awarding respondent the sum of $201,284 as damages for wrongful termination of an employment agreement.

H & R Block, Inc., is a corporation engaged in a nation-wide business of preparing tax returns. The local offices are located in the various states and are operated either by franchise or employee contracts. The written employment agreement under which respondent operated a local office for H & R Block, Inc., contained a provision which provided for termination by either party upon the requisite notice.[1]

At the time of the execution of this agreement, it was decided that respondent Brawthen would open an H & R Block Company office in Bakersfield, California, requiring a move of the Brawthen family from Minneapolis. During the contract discussions, Mrs. Brawthen asked Richard Bloch what guarantee they would have that they would not be terminated after they went out to Bakersfield and developed the business over a period of years. Mr. Bloch said that they had the word of Henry

---

[1]The provision reads as follows: "12. This agreement shall be for a period of two years from the above date and thereafter shall automatically renew from year to year unless either party gives written notice of termination 90 days prior to renewal date. This contract would also terminate if any law were passed to make the operation of the business illegal . . . ."

and Richard Bloch that they never terminated a contract and did not terminate contracts. Mr. Bloch said that if Brawthen did a good job in the area, he would not be terminated, and added that when a contract was changed, somebody got hurt and they did not want anybody to get hurt. Mr. Bloch also added that the business was a wonderful family opportunity because it was a business plaintiff could treat as his own and pass on to his children.

In the fall of 1962, Brawthen sold his resort and his part-time bookkeeping and accounting service and moved his family to California, to San Mateo rather than Bakersfield, because of an agreed contract change. He opened his first H & R Block office in San Mateo for the 1963 tax season. For the tax season of 1964, respondent had offices open in San Mateo, Redwood City and Palo Alto. In 1966, he opened his fourth office in Mountain View, and for the first time found it unnecessary to resort to outside employment to support his family.

During the tax season of 1967, plaintiff received a document from defendant known as "Bull Sheet No. 104." The Bull Sheet is a publication sent from defendant's corporation headquarters in Kansas City to managers of H & R Block offices. It contained news and company policy. Bull Sheet 104, entitled "Rumors," stated that the only reason a manager, either franchisee or employee, needed to worry about having his contract terminated was in the case of gross infractions of the contract or the Policy and Procedure Manual, and further that no manager needed to worry about his contract if he was doing a good, honorable, conscientious job to best serve the public and following the principles outlined in the Policy and Procedure Manual.

In November of 1967, the company decided to change the employment contracts to provide for a sliding scale of commission rates in lieu of the fixed commission rate which, at least in Mr. Brawthen's contract, was 50 percent of net profits. Brawthen refused to accept the change and brought suit in September 1968 for declaratory relief. H & R Block terminated his employment contract as of April 1969, and in a supplemental complaint, plaintiff alleged a wrongful termination and claimed damages.

Mr. Bloch at trial denied making any promises regarding permanence to Mr. Brawthen. He admitted, however, that he had previously testified in another trial that he told all his managers that the contract would be theirs for life as long as they did a good job.

The first trial of this matter ended with an order granting nonsuit. Mr. Brawthen appealed and the judgment was reversed on the ground that the trial court erred in not considering extrinsic evidence to determine whether or not the written employment agreement constituted an integrated agreement. (*Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131 [104 Cal.Rptr. 486].)

In *Brawthen,* the court explained that the Supreme Court in *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], had repudiated the older "face of the document" rule in which the question of integration had to be determined from the written document alone. Extrinsic evidence as well as the document must be considered. "The language of the writing is an important consideration, particularly where it recites that all understandings of the parties are contained therein; these are the so-called words of 'integration' [citation]. But the determination may not be made from the writing alone [citations]; the proffered collateral parol agreement itself must be considered, as well as the circumstances surrounding the transaction, and its subject matter, nature and object. [Citations.]" (*Brawthen* v. *H & R Block, Inc., supra,* at p. 137.)

The retrial was held in two parts. In the first portion, the court, without a jury, considered the proffered parol evidence bearing on the integration issue. The court ruled that it could not be said as a matter of law that the document was integrated and, therefore, the offered evidence would be admitted. In the second phase of the proceedings, the parol evidence was admitted and the jury instructed that they were to decide what the terms of the contract between the parties were based upon the oral and written evidence.[2]

■ The appellant first contends that the trial court erred in refusing to allow the jury to redetermine the question of integration.[3]

---

[2] The court instructed that: "You are the sole and exclusive judges of the credibility of the witnesses who have testified in this case."

"California Civil Code Section 1636 provides: A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"California Civil Code Section 1625 provides in part: The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations concerning its matter which preceded or accompanied the execution of the instrument."

"California Civil Code Section 1639 provides in effect: When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other instructions given to you on this subject."

"The terms of the contract between the plaintiff and defendant may be established by both oral and written evidence. Based upon that oral and written evidence which has been presented to you, you must decide what the terms of the contract between the parties were."

[3] The court refused the following instructions:

"DEFENDANT'S INSTRUCTION NO. 16. PAROL VARIATION OF TERMS OF

Appellant recognizes that the court in *Brawthen* held that "Whether or not the writing constitutes an integrated agreement is a question of law for the court." (28 Cal.App.3d at p. 137.) Appellant, however, argues that if the court decides that it cannot be said as a matter of law that the parties intended an integrated agreement, the evidence is admissible and the jury gets a chance to decide the integration question itself.

Appellant argues that the proper procedure is that set forth in Evidence Code section 403. This section provides that where the relevancy of the proffered evidence depends on the existence of a preliminary fact and in certain other specified situations, the court will first determine if there is evidence sufficient to sustain a finding of the existence of the preliminary fact and if the court admits the proffered evidence "[m]ay, and on request shall, instruct the jury to determine whether the preliminary fact exists and to disregard the proffered evidence unless the jury finds that the preliminary fact does exist." (Evid. Code, § 403, subd. (c)(1).) Section 403, as well as section 404, are exceptions to the rule of finality of a court's decision on a question of law. (*People* v. *MacIntosh* (1968) 264 Cal.App.2d 701, 708 [70 Cal.Rptr. 667].) The comments to section 403 explain: "The preliminary fact questions listed in subdivision (a), or identified elsewhere as matters to be determined under the Section 403 standard, are not finally decided by the judge because they have been traditionally regarded as jury questions. The questions involve the credibility of testimony or the probative value of evidence that is admitted on the ultimate issues. It is the jury's function to determine the effect and value of the evidence addressed to it. Evidence Code § 312. Hence, the judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question. The 'question of admissibility . . . merges imperceptibly into the weight of the evidence, if admitted.' [Citation.] If the judge finally determined the existence or nonexistence of the preliminary fact, he would deprive a party of a jury

DOCUMENT. California Code of Civil Procedure Section 1856 provides: When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity."

"DEFENDANT'S INSTRUCTION NO. 25. When the terms of an agreement have been reduced to writing by the parties the law prohibits the use of extrinsic evidence to vary, add to or detract from the terms of the contract that has been reduced to writing. *Weisenburg* v. *Thomas*, 9 C.A.3d 961 (1960)."

decision on a question that the party has a right to have decided by the jury." (Comment—Assembly Committee on Judiciary.)

The question of whether a contract is "integrated" is not one to which section 403 applies. It is clearly not one of those "traditionally regarded as jury questions." (See *Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co.* (1970) 10 Cal.App.3d 206, 215-216 [88 Cal.Rptr. 858]; Witkin, Cal. Evidence (2d ed.) § 721(3), p. 668.) The matters to which the court must address itself in determining whether the evidence of an oral agreement should go to the jury are such questions as (1) whether the written agreement appears to state a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; (4) whether the jury might be misled by the introduction of the parol testimony. (*Masterson* v. *Sine, supra,* 68 Cal.2d 222, 225-228.)

With respect to preliminary fact determinations not governed by section 403 or 404, section 405 applies. This section provides that:

"(a) When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises.

"(b) If a preliminary fact is also a fact in issue in the action:

"(1) The jury shall not be informed of the court's determination as to the existence or nonexistence of the preliminary fact.

"(2) If the proffered evidence is admitted, the jury shall not be instructed to disregard the evidence if its determination of the fact differs from the court's determination of the preliminary fact."

Under this section, the jury proceeds with its proper function, determining the related questions of credibility of witnesses and the parties' intent. (See *Brawthen* v. *H & R Block, Inc., supra,* 28 Cal.App.3d at p. 138.) These questions were given to the jury to decide under adequate instructions. The instructions requested by appellant would have been improper.

■ Appellant further contends that the court erred in refusing to instruct that the 90-day termination clause could not be reasonably

interpreted to limit the power of H & R Block to terminate only for cause.

The trial court was correct in refusing this instruction. On the former appeal, the reviewing court made a point of distinguishing between two concepts "which concern the effect of oral conversations or understandings related, but extrinsic, to a written agreement which is unambiguous on its face." (28 Cal.App.3d at p. 136.) One concept elaborated upon in *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], is that extrinsic evidence is admissible to prove the meaning to which the language of a contract is reasonably susceptible. The court in *Brawthen* explained that this concept did not apply in the case before it[4] and turned to a discussion of the concept that did apply, i.e., the concept that extrinsic evidence may be introduced to determine whether or not the writing constitutes an integrated agreement.

Respondent did not change his theory of recovery on the retrial and the rule of *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co., supra,* does not apply. To explain the rule in an instruction and state that it does not apply would, as the court concluded, be confusing to the jury. Furthermore, it might well tend to mislead the jury to the mistaken belief that the oral agreement could not be given effect.

■ Appellant also claims error in the following instruction on damages: "Anticipated profits, if their loss is a direct and natural consequence of the breach, may be recovered for breach of an employment contract. Anticipated profits lost through breach of contract may be estimated, and where the defendant, by its breach of the contract, has given rise to the difficulty of proving the amount of loss of profits, it is proper to require of the plaintiff only that he show the amount of damages with reasonable certainty and to resolve uncertainties as to the amount of anticipated profits against the defendant."

Appellant claims that this instruction tells the jury that plaintiff has sustained his burden of proof if he has raised a mere uncertainty in the

---

[4]The court stated: "In the instant case it may not be said, nor do we understand Brawthen to contend, that the parties *understood* the contract's *words* authorizing each party 'to give written notice of termination ninety days prior to renewal date,' to mean that the contract would not be terminated while he was doing a 'good job.' Indeed, it was because the parties, or at least the Brawthens, did *not* so understand, that oral assurance of the contract's continuation while a good job was being done was insisted upon, and given. It becomes patent that we are not here concerned with the rule expounded in *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co., supra.*" (28 Cal.App.3d at p. 136.)

minds of the jurors. Appellant is mistaken. The instruction tells the jury that plaintiff must show damages "with reasonable certainty" and does not misstate the law. Once plaintiff has established the basis for a loss of anticipated profits with reasonable certainty, then any other uncertainties that arise necessarily in calculating the amount of anticipated profits should be resolved against the party causing the breach. (See *Mahoney* v. *Founders' Ins. Co.* (1961) 190 Cal.App.2d 430, 436 [12 Cal.Rptr. 114], citing *Grupe* v. *Glick* (1945) 26 Cal.2d 680, 693 [160 P.2d 832]; *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 651 [160 P.2d 804].)

■ We have also concluded that the trial court did not err in admitting evidence of statements made to other managers of H & R Block, Inc.

Mr. Bloch denied that he had ever told Mr. Brawthen that as long as he did a good job the contract would be his. Testimony from another trial was read in which Mr. Bloch testified that he told all of the managers he had hired that so long as they did a good job, the contracts would be theirs. A portion of a deposition given by Duane Resch, an assistant of Richard Bloch, was also read into evidence in which Mr. Resch stated that Mr. Bloch had told him that he could tell prospective office managers substantially the same thing.

The fact that Mr. Bloch stated that he told *all* managers a certain thing would tend to show that he told Mr. Brawthen the same thing if Mr. Brawthen is in the same class of employees. Appellant's reliance upon *Lande* v. *Southern Cal. Freight Lines* (1948) 85 Cal.App.2d 416 [193 P.2d 144], is misplaced. He cites *Lande* for the proposition that a contract between two parties is not admissible to prove the terms of a contract between one of them and a third party, absent a common plan, scheme, habit or usage. First of all, the testimony here was not offered to prove the terms of other contracts or of Mr. Brawthen's contract but to show that H & R Block had a standard pitch for all prospective managers, thus showing the common habit of usage which, according to *Lande* itself, is relevant.

To refute the existence of such a common practice was the purported reason appellant urged the court to admit testimony of witnesses Gilliland and Leedahl, managers in other cities for H & R Block, who were hired about the same time as Brawthen. Appellant was allowed to ask these witnesses if Mr. Bloch had promised them the contract would be theirs as long as they did a good job and both men answered that he had not. ■ Appellant now complains that the court improperly

limited consideration of this evidence to impeachment purposes. The admissibility and the limiting instruction were discussed in chambers and defense counsel rather than objecting to the instruction, acquiesced in this view of the relevancy of the rebuttal evidence of Gilliland and Leedahl. He may not now complain. (See *Reinders* v. *Olsen* (1923) 60 Cal.App. 764, 770 [214 P. 268].)

■ We also find no merit in appellant's contention that the evidence was insufficient to support the judgment in that plaintiff failed to show consideration in exchange for a promise of permanent employment.

It is a long-established principle that a "contract for permanent employment . . . is only a contract for an indefinite period terminable at the will of either party . . . unless it is based upon some consideration other than the services to be rendered." (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867]; see also *Ruinello* v. *Murray* (1951) 36 Cal.2d 687, 689-690 [227 P.2d 251]; *Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal.App.2d 426, 430 [41 Cal.Rptr. 819].)

The court in *Brawthen* considered that "it could reasonably have been concluded that the employment agreement was supported by consideration other than the services to be rendered by Brawthen." (28 Cal.App.3d at p. 138.) The court in setting forth the facts favorable to plaintiff had noted that Mrs. Brawthen asked, upon seeing the contract with its termination provision, " 'What guarantee do we have that after we go out to Bakersfield and develop the business over a period of years, what guarantee do we have that we just won't be terminated?' " (28 Cal.App.3d at p. 134.) She testified in like manner at the retrial. A detriment, in the form of removal of family and foregoing of other business and contacts, if bargained for, will constitute sufficient consideration to support a contract for permanent employment. (See *Ferreyra* v. *E. & J. Gallo Winery, supra,* at p. 427; *Millsap* v. *National Funding Corp.* (1943) 57 Cal.App.2d 772, 775-777 [135 P.2d 407].) It is concluded that the evidence was sufficient to sustain the judgment.

The judgment is affirmed.

Scott, J., and Good, J.,* concurred.

A petition for a rehearing was denied November 14, 1975, and appellant's petition for a hearing by the Supreme Court was denied December 11, 1975.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.