[Civ. No. 25925.   Second Dist., Div. Four.   Sept. 27, 1962.]

BERTHA M. REGUS et al., Plaintiffs and Appellants, v. GLADSTONE HOLMES, INC., et al., Defendants and Respondents.

William M. De Falla for Plaintiffs and Appellants.

Martin L. Abrams, Joseph Lewis, Samuel B. Stewart, Hugo A. Steinmeyer and Robert H. Fabian for Defendants and Respondents.

BURKE, P. J.—Plaintiffs Bertha and Robert Regus instituted action charging six defendants with conspiracy to defraud plaintiffs of a strip of land 25 feet wide by 390 feet long which plaintiffs contend should have become vested in them as a result of a transaction involving an exchange of properties.

Plaintiffs acquired certain property on Stewart Avenue in Baldwin Park, California, in 1952, a portion of which was purchased from Tony and Rosalie Vitale, deceased parents of defendants Sam Vitale and Mary "Vitale" Sobieski. Early in the year 1955 an escrow was opened by defendant Heil as escrow clerk whereby Tony and Rosalie Vitale agreed to exchange certain property with plaintiffs. The Vitales were to grant property fronting on Stewart Avenue to plaintiffs and plaintiffs were to pay the sum of $750 to the Vitales and join in a grant of their interest in property not on a street to defendant Gladstone Holmes, Inc., a tract developer, which was purchasing contiguous land from the Vitales.

A dispute arose as to the boundary limits of the property to be acquired by the plaintiffs. Defendant Bell was employed by Tony Vitale to survey the lands in question. Plaintiffs called upon an engineer, Frederick A. Cogswell who was familiar with the property to advise them.

On February 22, 1955, Mr. Cogswell made a survey of the property and met in plaintiffs' home with Mrs. Regus, defendant Bell, Sam Vitale, Mary Sobieski, Tony and Rosalie Vitale. Plaintiff Robert Regus was not present. Mr. Bell prepared a written "agreement" in the presence of the parties which was prefaced with the statement "In order to settle the boundarys [sic] of the Regus-Vitale property as set forth in various deeds and agreements, . . . ." All parties present signed the document with Bell and Cogswell acting as witnesses. During her testimony Mrs. Regus denied signing the agreement on direct-examination, and was equivocal on that point in cross-examination, but it is apparent that she did in fact sign it. The document provided that in the exchange of lands plaintiffs were to receive 345 feet of frontage on Stewart Avenue and quitclaim "all rights outside of this new deed." This varied from the 370 feet on Stewart which plaintiffs claim they had previously been assured they would receive through the exchange of properties.

In the latter part of April 1955 the parties went to the escrow to arrange for its final closing. Defendant Heil was not present. Another escrow clerk participated in her place.

At that time Mrs. Regus read over the documents which had been prepared for plaintiffs' signatures. These instruments provided for 345 feet of frontage on Stewart Avenue. At that time she told Mr. Bell she was entitled to from 350 to 352 feet frontage thereon but nevertheless executed the instruments without insisting upon the change. Mrs. Regus testified at the trial, in answer to a question as to whether she was given any written description of the property which they were acquiring, that she looked at the escrow instructions and saw the figure "345." Plaintiffs' attorney, Mr. Johnson, was also present at the escrow at the request of plaintiffs, and it was only after considerable discussion and argument that plaintiffs signed the deeds and closing documents.

Mr. Regus testified that on February 22, 1955, he was told by his wife of the written agreement that had been made that day as to what property plaintiffs were to receive and what property and cash they were to give in return. He stated he accepted his wife's actions in reaching this agreement. He further testified that he knew Frederick Cogswell and that he was a surveyor and engineer who had done some surveying and engineering for plaintiffs; that his attorney, Mr. Johnson, was present at the escrow and talked with him and explained things before the final papers were signed.

The trial was by jury and lasted approximately ten days. The jury brought in a verdict for defendants.

Plaintiffs' cause of action is predicated on the oral representations allegedly made to them by defendants to the effect that plaintiffs were to receive not less than 370 feet of frontage on Stewart Avenue.

The defendants rely on the agreement of February 22, 1955, which document they assert constituted a novation.

Plaintiffs' contention is that even though they signed the escrow papers, and assuming the document submitted by defendants was signed by Mrs. Regus, plaintiffs' damage was caused by the concerted acts of defendants and each of them through their fraudulent oral representations to plaintiffs that the latter were to receive more land than they actually received.

On appeal plaintiffs contend the court committed error in giving defendants' (Vitale and Sobieski) Instruction "E" which read: "That if you find from the evidence that a new agreement or novation was entered into by the parties, plaintiffs and the Vitales; then you must disregard all previous agreements between these parties. If you find that the

plaintiffs herein received all they were entitled to receive under this new agreement or novation, then you must find for the defendants and each of them''; and defendants' Instruction ''I'' reading:

''1625 of the Civil Code of California provides that 'the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.'

''Paragraph 1860 of the Code of Civil Procedure further provides 'the circumstances to be considered. For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the *jury* be placed in the position of those whose language *it* is to interpret.' '' (Emphasis added.)

Certainly Instruction ''E'' and the first paragraph of Instruction ''I'' are correct statements of the law and are applicable to the facts of this case. Each of the instructions relates to the existence and effect of the agreement of February 22, 1955. The making of the agreement and its effect on the prior oral representations are in issue on the determination of whether or not plaintiffs justifiably relied upon representations of the defendants.

Instruction ''E'' and the first paragraph of Instruction ''I'' refer to a rule of law often designated ''the parol evidence rule.'' This rule reduced to its simplest terms denies the admission of extrinsic evidence to vary the terms of an integrated written instrument.

In fraud cases the parol evidence rule is normally held inapplicable; that is, parol evidence of fraud is admissible to establish invalidity of a written instrument where such evidence tends to establish some independent fact or representation or some fraud in procurement of the instrument or some breach of confidence concerning its use. (*Chastain* v. *Belmont,* 43 Cal.2d 45, 51 [271 P.2d 498]; *Richard* v. *Baker,* 141 Cal.App.2d 857, 863 [297 P.2d 674].)

However, the parol evidence rule is applied and parol evidence is held inadmissible where the alleged fraud concerns a promise or representation directly at variance with the terms of the written instrument. (*Bank of America* v. *Pendergrass,* 4 Cal.2d 258, 263, 264 [48 P.2d 659]; *Bank of America* v. *Lamb Finance Co.,* 179 Cal.App.2d 498, 502 [3 Cal.Rptr. 877].)

In the instant case the alleged fraudulent promise

or representation made by some of the defendants was that plaintiffs were to receive 370 feet of frontage on Stewart Avenue as a result of the real property exchange transaction. That representation was followed on February 22, 1955, by an integrated written agreement providing for 345 feet of frontage. Clearly the parol representation as to the amount of frontage is directly at variance with the amount specified in the written instrument. Even assuming such parol representation was fraudulent the jury was properly instructed to disregard it if they found there was a novation.

■■■ With respect to the second paragraph of Instruction ".I", which sets out the language of section 1860, Code of Civil Procedure, plaintiffs are correct in stating that such a rule of construction is intended to guide the judge in arriving at a conclusion of law as to the legal meaning of an instrument and the jury should not be left with the interpretation of the legal effect of a contract. Furthermore, they assert the rule of construction set forth in section 1860 can only be invoked to explain an ambiguity which appears on the face of the document itself. (*Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19, 22 [297 P. 20].)

■■■ However, as pointed out in *Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340, 356 [39 P.2d 838], where the meaning of a writing is uncertain or ambiguous and parol evidence is introduced in aid of its interpretation, the question of its meaning is for the jury. ■■■ Moreover, assuming that under the facts of the case before us the general rule more properly applied, submission to the jury of a question of law does not constitute reversible error where the jurors followed correct instructions applicable to the issues. (*Poncino* v. *Sierra Nevada Life & Casualty Co.*, 104 Cal.App. 671, 676 [286 P. 729].)

Here, as in the cases cited in the preceding paragraph, the evidence was sufficient to sustain the verdict of the jury. Certainly the giving of the instruction, assuming it to have been subject to criticism, did not result in a miscarriage of justice. There were ample other reasons for the jury to inquire into and consider the circumstances under which the agreement of February 22, 1955, was executed. It was offered in evidence by defendants for the purpose of proving that the charged fraud was waived by the novation which it is claimed took place through the execution of the instrument, at least by Mrs. Regus. ■■■ Whether the fraud was waived or not

is commonly a question of fact for the jury. (*Wilder* v. *Beede*, 119 Cal. 646, 651 [51 P. 1083].)

The issue as to whether there was a novation was first raised in the pleadings and subsequently retained as an issue in the pretrial order. There was also an issue of fact as to whether the document by which the claimed novation took place was either signed or binding upon the plaintiffs. The testimony of others present established the fact that Mrs. Regus did sign it. In view of these issues it was proper for the jury to receive evidence of the facts and circumstances surrounding the execution of the document and to be instructed that they could consider the circumstances under which it was made. The question of whether the execution of such a document constituted a waiver of the claimed oral misrepresentations was a question for the trier of fact. (*French* v. *Freeman*, 191 Cal. 579, 590 [217 P. 515].)　█　Whether acts of a defrauded party do or do not constitute a waiver must be determined in connection with the circumstances of each case. (*Chung* v. *Johnston*, 128 Cal.App.2d 157, 165 [274 P.2d 922].)

█　Plaintiffs contend that the court committed error in allowing counsel for defendants Sam Vitale and Mary Sobieski to read verbatim their proposed Instruction "I" to the jury during his argument and over the objection of counsel for plaintiffs. While, as pointed out by plaintiffs' counsel, the practice of permitting attorneys during argument to read portions of the proposed instructions to the jury is to be discouraged, it does not constitute reversible error for a judge to have permitted it to be done. (*Boreham* v. *Byrne*, 83 Cal. 23, 29 [23 P. 212]; *People* v. *Conley*, 134 Cal.App.2d 580, 582 [285 P.2d 693].) Clearly, such procedure is entirely within the discretion of the trial judge and we find there was no abuse of such discretion in this case.

It is contended by plaintiffs that the court also committed error in instructing the jury on the question of a novation when the plaintiffs were relying exclusively upon fraudulent representations. We find no merit in this contention.

█　Lastly, plaintiffs contend that the court should not have refused an instruction proffered by plaintiffs dealing with their consultation with others regarding the transaction. They cite *Feckenscher* v. *Gamble*, 12 Cal.2d 482 [85 P.2d 885], and *Neher* v. *Hansen*, 12 Cal.App. 370 [107 P. 565], as support for the statement that a party charging detrimental misrepresentations is not precluded from relying on the misrepresentations even if he or she consulted with others regarding the trans-

action complained of. In the *Feckenscher* case the evidence was clear that the plaintiff's lawyer, although consulted, refused to advise the plaintiff. In the *Neher* case it was held that there was no error in the court's refusal to instruct the jury to the effect that if plaintiff consulted with or received information from others such fact of itself precluded plaintiff's recovery as it would not follow as a matter of law that such information as was received through the consultation was of such character as to influence plaintiff in the transaction. Such an instruction would take from the jury the determination as to whether or not plaintiff relied upon the representations made by defendants.

In the case before us it is clear that plaintiffs not only consulted with others but relied upon their surveyor, engineer and attorney. The element of reliance necessary to the recovery in an action for fraud was clearly explained to the jury by several other instructions given by the judge.

Article VI, section 4½ of the California Constitution provides "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (*Martin* v. *Vierra,* 34 Cal.App.2d 86, 95 [93 P.2d 261].) We find no miscarriage here.

Judgment is affirmed.

Jefferson, J., and Ford, J.,* concurred.

A petition for a rehearing was denied October 16, 1962, and appellants' petition for a hearing by the Supreme Court was denied November 21, 1962.

---

*Assigned by Chairman of Judicial Council.