**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

JEANINE CARSON,
          *Plaintiff-Appellant,*

v.

CANADA LIFE ASSURANCE COMPANY,
          *Defendant-Appellee.*

No. 01-1418

JEANINE CARSON,
          *Plaintiff-Appellee,*

v.

CANADA LIFE ASSURANCE COMPANY,
          *Defendant-Appellant.*

No. 01-1452

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge;
Charles B. Day, Magistrate Judge.
(CA-99-1079-DKC)

Argued: December 4, 2001

Decided: January 25, 2002

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Traxler wrote a
concurring opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Peter Drennan, Alexandria, Virginia, for Appellant. Cynthia T. Andreason, LEBOEUF, LAMB, GREENE & MACRAE, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Patrick M. Donahue, THE DONAHUE LAW FIRM, Annapolis, Maryland, for Appellant. Katherine S. Kamen, Jonathan M. Wilan, LEBOEUF, LAMB, GREENE & MACRAE, L.L.P., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Jeanine Carson commenced this action against Canada Life Assurance Company for wrongfully denying Carson her claim for long-term disability benefits. A jury awarded Carson $350,000 in compensatory damages on her breach-of-good-faith claim and $750,000 in punitive damages, and the court computed breach-of-contract damages at $54,536. On Canada Life's post-verdict motion for judgment as a matter of law, the district court affirmed the compensatory damage award and vacated the punitive damage award. On the cross-appeals of the parties, we affirm.

I

Beginning as an employee in 1995, Carson worked as a senior accounting technician with the City of San Juan Capistrano, California (the "City"), which provided its employees with long-term disability insurance through a policy issued by Canada Life. The policy provided that employees would receive 67% of their monthly earnings up to $6,000 per month for total disability.

In May 1997, Carson was diagnosed with severe fibromyalgia by Dr. Mark Jason, a rheumatologist. Fibromyalgia is a complex, chronic condition that causes widespread pain and profound fatigue, as well as a variety of other symptoms, including sleep disturbances, stiffness, headaches, cognitive disorders, and depression. The American College of Rheumatology specifies that fibromyalgia's diagnosis is characterized by widespread, musculoskeletal pain for longer than three months in all four quadrants of the body, by an absence of other systemic disease that could be the cause of the pain, and by the presence of 11 of 18 designated "tender points" (points of extreme tenderness) at characteristic locations on the body. No cure is available, but the symptoms can often be mitigated by narcotic medications. The disease can be permanent and its causes are unknown.

After Carson was placed on disability by her primary care physician, Dr. Lisa Majer, Carson tried unsuccessfully to work part time. In January 1998, Dr. Majer placed Carson on full time disability.

In February 1998, Carson submitted a claim to Canada Life for long-term disability benefits. Along with her claim, she provided Canada Life with a release, allowing Canada Life to obtain her medical records from Dr. Majer, her primary care physician, and Dr. Jason, the rheumatologist who first diagnosed and continued treating Carson's fibromyalgia.

The medical director at Canada Life, Dr. Lund, who was not a rheumatologist, reviewed the claim, and, without consulting Carson's doctors, concluded that Carson "does not meet the criteria for FM [fibromyalgia] . . . [because] [t]o be approved, medically, for FM, a client must have 11 out of 18 'tender points' in the body, client has only a few." Canada Life denied Carson's claim for benefits on April 14, 1998, stating that her medical record did not "support a diagnosis of Fibromyalgia" and that her condition did not prevent her from performing her job.

Carson appealed that determination within Canada Life, and with her letter of appeal, she included a letter from Dr. Jason, who explained his diagnosis of Carson's disability, pointing out that Carson showed positive at all 18 tender points for pain and concluding

that "the patient is totally disabled for her own or any other occupation."

Canada Life then concluded that the diagnosis of fibromyalgia was "now clear," but it indicated that because the diagnosis does not prove a disability, Carson should undergo a "functional capacity evaluation." This evaluation demonstrated that Carson could perform only a limited sedentary job and that she had only a 20-minute tolerance for sitting. The functional capacity evaluation did not evaluate Carson's mental capacities or ability to concentrate, both of which had also been adversely affected by her fibromyalgia. Carson's appeal was reviewed at Canada Life by Dr. John Wolff, also not a rheumatologist, who agreed that the diagnosis of fibromyalgia was probably the "best choice" of diagnosis, but he denied the claim for benefits because, as he concluded, Carson could return to work at "light duty." At trial he corrected this conclusion, stating that he actually meant "light work." He said "light duty" was a term of art defined as work involving lifting a maximum of 20 pounds.

Because Carson was unable to support herself without disability benefits, she moved from California to Maryland to live with relatives. After she arrived in Maryland, Canada Life formally denied her appeal.

Carson commenced this action against Canada Life, alleging, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing, and she demanded both compensatory and punitive damages.

The jury returned a special verdict in favor of Carson and awarded damages on the claim for breach of good faith in the amount of $300,000 and punitive damages in the amount of $750,000. On the breach-of-contract claim, the jury found for Carson and the district court calculated the damages at $54,536 and included that amount in the judgment. On Canada Life's motion for judgment as a matter of law, the district court vacated the punitive damage award but affirmed the remainder of the judgment. In vacating the punitive damage award, the court concluded that under California law, which the parties agreed was applicable, Carson had failed to introduce required evidence of Canada Life's ability to pay a punitive damage award.

Carson appealed the district court's decision to strike the punitive damage award, and Canada Life cross-appealed the denial of its Rule 50 motion on the breach-of-contract and breach-of-good-faith claims.

II

Addressing first the assignments of error with respect to liability, we consider Canada Life's contention that the district court erred in submitting to the jury the question of what was required under the policy to establish total disability. While the interpretation of contract terms is ordinarily a question of law for the court, when a term is ambiguous, extrinsic evidence of its meaning may be received and its meaning becomes a question of fact for resolution by the jury. *See Waller v. Truck Ins. Exch., Inc.*, 44 Cal. Rptr. 2d 370, 378 (Cal. 1995); *Regus v. Gladstone Holmes, Inc.*, 25 Cal. Rptr. 25 (Cal. Dist. Ct. App. 1962).

The provision at issue in this case is the policy's definition of "totally disabled." The policy provides:

> "Totally disabled" means that the person is unable to work and fulfills either of the two conditions below:

> Condition 1 — During the elimination period and for the next 24 months after the elimination period in a continuous period of disability, the person is unable to perform with reasonable continuity the substantial and material duties of his own occupation in the usual or customary way, or

> Condition 2 — After the elimination period plus the next 24 months in a continuous period of disability, the person is unable to perform with reasonable continuity the substantial and material duties of any occupation for which he is qualified in view of his age, education, training, experience, station in life, and physical and mental capacity.

Each party advances a plausible interpretation of this provision. Canada Life contends that in order to be totally disabled under this provision, the insured must first demonstrate that she is "unable to

work," as required by the introductory clause. It argues that Conditions 1 and 2 that follow are to be read to operate sequentially, depending on the time frame at issue. During the "elimination period" (the first 30 days) and the first 24 months thereafter, the insured must meet the easier standard for disability established by Condition 1. After the expiration of the elimination period and the first 24 months referred to in Condition 1, the insured must meet the more difficult standard of Condition 2 to continue receiving disability benefits.

On the other hand, Carson argues that the plain policy language permits her to satisfy *either* Condition 1 *or* Condition 2 to be totally disabled. She agrees that she must establish initially that she is "unable to work," as required in the introductory clause. Then, she argues, she may satisfy *either* of the two conditions because they are stated disjunctively, using the word "or" between them. In addition, the introductory clause specifies that the employee must fulfill "*either* of the two conditions below." While Carson's interpretation persuasively fits the plain language of the contractual definition, it does render Condition 2 superfluous, because Condition 1 would always be satisfied more easily.

Faced with this ambiguity, we conclude that the district court correctly submitted the issue to the jury.

### III

Canada Life next contends that the district court erred in admitting the testimony of two rheumatologists, Dr. Jason, who first diagnosed and treated Carson's fibromyalgia in California, and Dr. Donald Thomas, who treated Carson after she moved to Maryland. Both doctors expressed their opinions that Carson was "disabled." Canada Life contends that while the doctors could testify to Carson's medical status, they were not qualified to testify to her disability status. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). We do not believe, however, that the district court abused its discretion in admitting the evidence. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

While it is true that both doctors testified that Carson was disabled, they did not purport to give expert opinions on whether the nature of

Carson's work or the policy definition of "disability" rendered her disabled. Rather, their testimony went to Carson's general physical condition, a matter on which both were qualified to testify. Because they were treating physicians, they were in a position to testify to Carson's physical and mental capacity, which they did. Canada Life was then free to limit their "disability" interpretation through cross examination, bringing out the doctors' acknowledgments that they were not gauging Carson's disability against her workplace requirements or the policy definition. Accordingly, we conclude that the district court did not abuse its discretion in admitting this testimony.

IV

Canada Life also contends that the evidence was insufficient to prove Carson's total disability status. In reviewing this contention, we examine the record to determine as a matter of law whether the evidence, viewed in the light most favorable to the non-moving party, would "permit[ ] a jury reasonably to return" the verdict. *Sales v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998).

As prescribed by Condition 1 of the policy's definition of "total disability," Carson had to show that for 25 months (the 30-day "elimination" period plus 24 months) she was unable to "perform with reasonable continuity the substantial and material duties" of her own occupation "in the usual and customary way." The relevant time frame was February 1, 1998, to February 1, 2000, because Carson was placed on disability by Dr. Majer on January 30, 1998. We believe that the evidence in support of her disability status was ample.

First, Carson herself testified that she could not work even part time because of her severe pain, fatigue, and inability to concentrate — conditions about which she testified at length. Second, Dr. Jason testified that Carson complained of "pain all over" as she had a "severe" case of fibromyalgia. He testified that most fibromyalgia patients do not get better and that Carson was "kind of stuck where she is," medically. Third, Dr. Thomas testified that Carson had been disabled due to fibromyalgia for the two years he had treated her. Finally, the functional capacity evaluation performed at the initiative of Canada Life demonstrated that Carson had only a 20-minute sitting tolerance — a tolerance that would make working as a senior

accounting technician, which required sitting for 5 to 6 hours each day, nearly impossible. The Job Analysis form completed by the City at Canada Life's request for Carson's position confirmed that a senior accounting technician was required to sit 5 to 6 hours a day.

V

Finally, Canada Life contends that the evidence was insufficient to support the jury's finding that it breached the implied covenant of good faith and fair dealing. It contends that its decision to deny benefits was protected by the "genuine dispute doctrine" under California law. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (noting that a "court can conclude as a matter of [California] law that an insurer's denial of a claim is not unreasonable, so long as there existed *a genuine issue as to the insurer's liability*" (internal quotation marks and citation omitted)).

In California, all insurance contracts include an implied covenant of good faith and fair dealing. *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246 (Cal. Ct. App. 1990). Under *Love*, the primary test for breach of an implied covenant of good faith and fair dealing "is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith." *Id.* at 255. Thus, two requirements must be established: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Id.*

Not only was there no genuine dispute about Carson's fibromyalgia and her disability from it, the jury could have concluded that the withholding of benefits was a breach of good faith and fair dealing. When Carson submitted her claim for disability benefits, Canada Life denied the claim because she did not have fibromyalgia although it had no medical basis for reaching that conclusion. After receiving a letter from Carson's treating physician, Canada Life reversed itself and agreed that Carson had fibromyalgia, but then it insisted that she was not disabled. Again, after the functional capacity evaluation was performed, it became clear that Carson was unable to "perform with reasonable continuity the substantial and material duties" of her own occupation "in the usual and customary way." Even Canada Life's internal documents recognized that Carson could not perform her

duties in the usual and customary way, acknowledging that she would qualify only for "light duty" or "light work." Moreover, the doctors at Canada Life who were responsible for Canada Life's decision were not rheumatologists, and they did not seek the professional advice of any rheumatologist who had familiarity with fibromyalgia. Finally, Canada Life never addressed the mental symptoms of fibromyalgia which rendered Carson even more completely disabled than had been conceded in Canada Life's internal conclusions.

In short, the jury could conclude that Canada Life had no reasonable basis to withhold benefits. Every piece of medical evidence indicated that Carson had fibromyalgia and that she was unable to perform her customary duties for the City. When viewing this evidence in a light most favorable to Carson, we conclude that it was sufficient to support the jury's verdict.

## VI

On her cross-appeal, Carson contends that the district court erred in vacating the $750,000-punitive damage award.

Under California law, while punitive damages are statutorily permitted for certain tort cases, *see* Cal. Civ. Code § 3294(a), the plaintiff bears the burden, as a condition to being awarded punitive damages, of introducing evidence of the defendant's ability to pay punitive damages. *See Adams v. Murakami*, 284 Cal. Rptr. 318, 327 (Cal. 1991) (in bank). This requirement is based on the public policy insuring that punitive damages do not financially destroy a defendant. *Id.* at 327-28.

Carson acknowledges the California requirement to introduce such evidence, and she acknowledges that she did not do so. She argues, however, that she requested the financial information about Canada Life's ability to pay during discovery, and Canada Life refused to produce the information. Yet, she acknowledges that she did not object to Canada Life's answer or file a motion to compel. This sequence does not justify Carson's failure to meet her burden of proof.

Carson also argues that she was somehow relieved of her burden of proof by the district court's failure to instruct the jury that Carson

needed to prove Canada Life's ability to pay. Even though the failure to include such a jury instruction may have been legal error, the illegal failure to give an instruction does not relieve Carson of the burden of introducing evidence sufficient to prove her claim.

Quite simply, Carson was required under California law to introduce evidence of Canada Life's ability to pay, and she failed to do so. Accordingly, the district court was correct in vacating the award.

For the reasons given above, we affirm the judgment of the district court.

*AFFIRMED*

TRAXLER, Circuit Judge, concurring:

I concur in Parts I-V of the opinion. I concur also with my colleagues in the result of Part VI, but I would affirm the district court's decision to strike the award of punitive damages on a different basis. In my view, the record contains insufficient evidence to support an award of punitive damages. Carson did not present sufficient evidence from which a reasonable jury could conclude, by clear and convincing evidence, that Canada Life's conduct was "oppressive", a prerequisite under California law to the recovery of punitive damages in this case. *See* Cal. Civ. Code § 3294(a) (reserving punitive damages for conduct involving "oppression, fraud, or malice").

I hesitate to affirm the reasoning of the district court that Carson fails on her punitive damages claim because she did not introduce evidence of Canada Life's financial position. Only Canada Life is in a position to summarize its financial condition, yet it rebuffed Carson's attempts at discovery on this issue. After Carson rested her case, and again at the close of all the evidence, Canada Life moved for judgment as a matter of law on punitive damages, but not on the grounds that Carson failed to introduce evidence of its financial condition. Canada Life submitted jointly with Carson a proposed jury instruction on punitive damages that did not include Canada Life's financial condition as a consideration for the jury. Even after the jury rendered its substantial punitive damages verdict, Canada Life did not raise this

failure of proof in its post-trial motion under Rule 50(b). Accordingly, Canada Life's financial condition was never an issue at trial. Yet, when the district court struck Carson's substantial award, it did so on the basis that Carson failed to introduce such evidence, even though the jury instruction was lacking and Canada Life did not raise this issue at trial or after trial. In view of these facts, it seems that Carson was sandbagged into the reasonable belief that Canada Life, a large insurance company, had declined to make its ability to afford a punitive damages award an issue in this case. If the record otherwise supported an award of punitive damages, my inclination would be to return the case for a new trial on punitive damages. Since that is not the case, however, I readily concur in the majority opinion.