[Civ. No. 871.   Fifth Dist.   Apr. 17, 1968.]

DON K. SKONE, Plaintiff, Cross-defendant and Respondent, v. QUANCO FARMS, Defendant, Cross-complainant and Appellant.

Horowitz & Howard and Alvin F. Howard for Defendant, Cross-complainant and Appellant.

Young, Wooldridge, Paulden & Self and Robert J. Self for Plaintiff, Cross-defendant and Respondent.

GARGANO, J.—Respondent, a dealer in potatoes, brought this action against appellant Quanco Farms to restrain appellant from interfering with the harvesting of a potato crop. Quanco Farms is a corporation engaged in the business of farming. It is owned and controlled by Carl Quandt and H. F. Beckerdite. By stipulation of the parties the injunction issues were dropped and the harvest was allowed to proceed. Appellant then cross-complained, seeking damages against respondent for the alleged breach of their joint-venture agreement. The cause proceeded to trial on the issues raised by the cross-complaint, and at the conclusion of the trial the court granted judgment in favor of the respondent. This appeal followed.

The remaining undisputed facts are essentially as follows:

Appellant suffered farming losses during the years 1962, 1963 and 1964. On December 28, 1964, appellant entered into a joint-venture agreement with respondent for the growing and marketing of potatoes for the 1965 crop year. The agree-

ment *inter alia* provided that appellant would grow a crop of potatoes on farm land that it owned or controlled, and that respondent would harvest, pack and market the potatoes. The contract also provided that profits or losses resulting from the joint venture would be divided equally.

At the time that the joint-venture agreement was signed by the parties respondent had negotiated (and was in the process of negotiating) numerous contracts for the sale of potatoes to potato dealers in both the United States and Canada. These contracts, however, were not mentioned in the agreement nor were they formally assigned by respondent to the joint venture. Later, when the potatoes were harvested, respondent used the entire crop to fulfill his contractual commitments even though the price of potatoes had risen sharply.

Appellant raises numerous arguments to support its position that the trial court's judgment should be reversed. However, appellant's main contentions (and the ones determinative of the issues raised in this appeal) are essentially that (1) respondent breached his fiduciary duty to appellant when he used the joint-venture potatoes to fulfill his own contractual commitments, (2) the court erred when it admitted extrinsic evidence to show an oral agreement between the parties which authorized respondent to do so, (3) the evidence does not support the trial court's finding of fact concerning respondent's compliance with paragraph 5(e) of the joint-venture agreement, and (4) the findings of fact are not sufficient to support the trial court's conclusions of law or the judgment.

1. Appellant concedes that the joint-venture agreement delegates to respondent the exclusive right to market the joint-venture potatoes.[1] However, if we understand appellant correctly, it maintains that because respondent was vested with this exclusive responsibility he owed a high fiduciary duty to his co-adventurer and he could not deal with the joint-venture property for his own benefit at appellant's expense (*Laux* v. *Freed*, 53 Cal.2d 512 [2 Cal.Rptr. 265, 348 P.2d 873] ; *Prince* v. *Harting*, 177 Cal.App.2d 720 [2 Cal.Rptr. 545] ). Accordingly, appellant argues that when respondent used the potatoes to satisfy his own pre-existing contractual commitments, at a time when the market price was considerably higher, he

---

[1]Paragraph 5 of the agreement provides:

"5. In connection with the harvesting, packing and marketing of said potatoes it is agreed by the parties as follows:

"a. All of said operations shall be under the exclusive control of Skone."

subserved his own interest at the expense of his co-adventurer and hence breached his fiduciary duty. Moreover, appellant asserts that when respondent committed the joint-venture potatoes to this *limited* market program, without assigning the potato-processing contracts to the joint venture, he placed himself in a "heads I win, tails you lose position" which should not be tolerated; appellant argues that if the price of potatoes had dropped Skone would have used other potatoes to fulfill his contractual obligations.

██ The fiduciary duty between partners and joint adventurers is a rule of ethics and fairness and is essentially similar to the duty owed by an agent to his principal or by a trustee to his *cestui que trust*. Thus, under the law each partner must act in the highest good faith toward the other, and one must not take any advantage over the other by the slightest misrepresentation or concealment (*Laux* v. *Freed, supra,* 53 Cal. 2d 512; 37 Cal.Jur.2d, Partnership, § 46, p. 613). ██ However, there is no breach of a fiduciary duty if there has been a full and complete disclosure, if the partner who deals with partnership property first discloses all of the facts surrounding the transaction to the other partners and secures their approval and consent (Corp. Code, § 15021).[2] In fact, it would be incongruous to hold that a partner who consented to a partnership transaction, with full knowledge of all of the facts, may later complain and seek damages against the other partner simply because he benefited by the transaction.

Admittedly, appellant's argument that respondent was in an advantageous position when he committed the joint-venture potatoes to his potato-processing contracts without assigning these contracts to the joint venture is persuasive.

██ Nevertheless, we conclude that there was substantial evidence for the court to find that respondent did not breach his fiduciary duty to appellant. There was substantial evidence for the court to find that respondent fully and fairly disclosed his plans to appellant's officers, Carl Quandt, and H. F. Beckerdite, and secured their approval and consent.

First, appellant was having financial difficulties due to prior farming losses when its officers elected to join respondent in the joint venture to market the 1965 potato crop. Moreover, respondent testified that he informed Carl Quandt of his

---

[2]For a comparable situation, see *Fisher* v. *Losey,* 78 Cal.App.2d 121 [177 P.2d 334], where the court held that an agent who fully and fairly disclosed his interest in the transaction to his principal did not breach his fiduciary duty to the principal.

activities and that when he showed Mr. Quandt one of his potato-processing contracts the latter expressed satisfaction with the contract price and stated that he wanted appellant included in this marketing program. Thus, the court could reasonably believe that appellant's officers wanted to reduce appellant's financial risk for the 1965 potato crop by joining a firmly committed marketing program even though this meant a lesser profit if potato prices increased by the time that the potatoes were harvested.

Second, according to respondent's testimony, Carl Quandt and H. F. Beckerdite orally authorized respondent to commit the potato crop to his potato-processing contracts at a dinner meeting held shortly before the joint-venture agreement was signed, and then subsequently acknowledged this oral agreement on two separate occasions. Respondent stated that when he showed Mr. Beckerdite exactly how the joint-venture potatoes would fit into the marketing program Beckerdite stated that he was glad that the potatoes were already sold because the corporation "could not afford to gamble."[3] Respondent also testified that on June 28, 1965 (after the dispute between the parties had arisen), Carl Quandt told respondent that he knew the potatoes were sold.

Third, when Carl Quandt applied to the United California Bank, Bakersfield Branch, for a loan on behalf of the appellant corporation, he informed Mr. Reginald Bruce Burton, then the vice president of that bank, that appellant's potato crop was committed to respondent's potato-processing contracts. In fact, Mr. Burton stated that his bank probably would not have approved a loan "for the purpose of entering

---

[3]Respondent Skone testified as follows:

"A Herb and Dick discussed fertilizer and farming procedures and I talked to Herb quite extensively of my program and how they fit into it and how we started and I told Herb I had potatoes planted in Edison for my early contracts and I had potatoes bought or purchased or growing potatoes in Shafter, Wasco, Arvin areas that would follow immediately behind the Edisons and I had a spred sheet which I showed Herb showing how my sales I have tried to dove-tail my sales and supplies together and how they were part of the scheme and how the Quanco venture would fit in with the tail end of it because the planting would be last, and it is a little bit of a job because Herb and I discussed this and we also discussed at that time planting dates and we decided to plant approximately the first of February.

"Q Did he make any comment about this type of program?

"A Yes, he said he was very happy to be in it and since he had been with Quanco they hadn't been very successful and hadn't made much money and they were a little short of capital and they were glad to get into something, other than what they had been doing in order to make some money and they could not afford to gamble and he was glad I had the potatoes sold because he could not afford to gamble."

the joint venture had not we been assured that a substantial part of the crop was covered by these processing contracts . . .''

It is of course true that respondent did not formally assign the potato-processing contracts to the joint venture. However, a possible explanation for respondent's failure to do so is that according to respondent the joint-venture potatoes were used to fulfill only a small part of his contractual commitments. Moreover, appellant's suggestion that respondent would not have used the potato crop to fulfill his contractual commitments if the price of potatoes had dropped instead of risen is sheer speculation. Respondent testified that he committed the crop to the potato-processing contracts from the outset and that shortly after the joint-venture agreement was executed he showed Mr. Beckerdite exactly how the potatoes fitted into the program. Thus, the trial court could reasonably believe that respondent considered himself bound by his oral agreement, and we cannot disturb its decision on this issue. It is elementary that we do not weigh or resolve conflicts in the evidence or judge the credibility of witnesses (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]).

██ 2. It is of course settled, as appellant asserts, that ordinarily extrinsic evidence is not admissible to change, vary or add to the terms of a fully integrated written instrument (*Pollyanna Homes, Inc.* v. *Berney*, 56 Cal.2d 676 [16 Cal. Rptr. 345, 365 P.2d 401]; *Hale* v. *Bohannon*, 38 Cal.2d 458 [241 P.2d 4]; Code Civ. Proc. § 1856). However, it is also the rule that a prior or contemporaneous collateral oral agreement may be shown where it is not inconsistent with the terms of the integration even though it relates to the same subject matter (*Dillon* v. *Sumner*, 153 Cal.App.2d 639 [315 P.2d 84]; Witkin, Cal. Evidence (2d ed.) § 733, p. 679.) In fact, our Supreme Court in *Masterson* v. *Sine*, 68 Cal.2d 222, 227 [65 Cal.Rptr. 545, 436 P.2d 561], has recently stated:

''Evidence of oral collateral agreements should be excluded only when the fact finder is likely to be misled. The rule must therefore be based on the credibility of the evidence. One such standard, adopted by section 240(1)(b) of the Restatement of Contracts, permits proof of a collateral agreement if it 'is such an agreement as might *naturally* be made as a separate agreement by parties situated as were the parties to the written contract.' ''

Significantly, the joint-venture agreement was silent as to the manner in which the joint-venture potatoes were to be

marketed or committed to market. It simply stated that "all of said operations shall be under the exclusive control of Skone." Thus, it is manifest that appellant's approval of Skone's plan to commit the potatoes to his potato-processing contracts was not inconsistent with the terms of the written agreement. Moreover, such approval was of the nature "as might naturally" be given orally and apart from the written agreement.

In any event, the evidence of which appellant complains was admissible to disprove appellant's main contention that respondent was guilty of conduct tantamount to fraud and deceit, i.e., the breach of a fiduciary duty. It would be absurd to hold that one partner may charge another with reprehensible conduct in the management of the partnership affairs but that the other partner may not disprove the charges because of the parol evidence rule. One of the basic purposes of this rule is to prevent fraud or intentional invention by witnesses interested in the outcome of litigation (*Germain Fruit Co.* v. *J. K. Armsby Co.*, 153 Cal. 585 [96 P.2d 319]; *Masterson* v. *Sine, supra,* 68 Cal.2d 222). Manifestly, the rule cannot be used to perpetrate a fraud.

3. Appellant contends that the evidence does not support the trial court's finding of fact that respondent did not breach paragraph 5(e) of the joint-venture agreement. The rider to paragraph 5(e) provides:

"Within 48 hours after each sale of potatoes, Skone shall give Quanco written advice showing the quantity sold, the sales price and terms and the name of the buyer."

Appellant argues that the court's finding is in error because the written advice given by respondent to appellant showed the buyers of the joint-venture potatoes to be certain potato processors instead of the respondent himself. Appellant points out that respondent at no time made any assignment of the processing contracts to the joint venture, that the joint venture had no dealings directly with the potato processors and that payment was made by the potato processors directly to respondent.

This contention is simply another argument in support of appellant's proposition that respondent was guilty of fraud and deceit. However, as we have stated, there was substantial evidence for the court to find that the parties orally agreed that the joint-venture potatoes could be used to fulfill respondent's potato-processing contracts and that respondent considered himself bound by this agreement even though he did not formally assign the potato-processing contracts to the

joint venture. Under these circumstances the court could also reasonably find that the information which respondent furnished to appellant was in conformity with and not contrary to the intended purposes of paragraph 5(e) of the joint-venture agreement. Thus, it is difficult to understand in what manner appellant was damaged by the information that it received from the respondent. And this is particularly true since the books and records of respondent were open to its inspection.

4. The trial court expressly found "that said cross-complainant (appellant) at the time said joint-venture agreement was entered into orally consented and agreed that the potatoes grown by the joint venture could and would be appropriated to the fulfillment of cross-defendant's (respondent's) contracts with said potato processors." Appellant, however, contends that this finding is not sufficient because "[t]here is no finding that the purported oral agreement included a provision that the appropriation would be at less than the market price." Appellant also complains because the court rejected appellant's request for a finding on the question of whether "the joint venture sold the potatoes to Skone or to the processors."

Appellant correctly maintains that the finding of fact must "fairly disclose the court's determination of all issues of fact in the case" (Code Civ. Proc., § 632). Moreover, appellant also correctly maintains that the doctrine of implied or inferred findings does not apply to a material issue for which a special finding was requested but rejected by the trial court (Code Civ. Proc., § 634). However, even so, we conclude that the findings which the court made are sufficient and fairly disclose the court's determination of all material issues. The court found that respondent did not breach a fiduciary duty owed to the appellant. It also found that appellant orally agreed that the joint-venture potatoes could and would be appropriated to the fulfillment of respondent's contracts with the potato processors. Thus, it is manifest that the court by necessity also found that respondent sold the joint-venture potatoes, with appellant's approval and consent, to potato processors at prices specified in the potato-processing contracts which he had negotiated. And these findings, together with the other findings that the court made, are sufficient to support the judgment.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.