45 F.3d 435
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re DOMAIN TECHNOLOGY, INC., Debtor.
Ernest AUERBACH, Lisa Auerbach; Transamerica Title
Insurance Company; and AMC Substrates, Inc., Appellant,
Domain Technology, Inc., Debtor-Appellant,
v.
BANK OF THE WEST, Appellee.
 No. 92-17067.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 15, 1994.
Decided Dec. 22, 1994.
 
 Before: POOLE, CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Domain Technology ("Domain"), Ernest and Lisa Auerbach ("the Auerbachs"), and Transamerica Title Insurance Company ("Transamerica") appeal the district court's reversal of a bankruptcy court judgment, which had directed Bank of the West to reimburse Transamerica $200,000 for costs associated with the resolution of mechanics' liens pursuant to two letter agreements. These letter agreements created a method to resolve mechanics' liens against property owned by the Auerbachs and leased by Domain. The parties entered into the agreements in order to facilitate Domain's bankruptcy sale of its leasehold to AMC Substrates ("AMC"). The proceeds of the sale of the leasehold went to Bank of the West and Bank of New England ("the Banks"). The district court found that the bankruptcy court's judgment was inconsistent with the parties' agreement and reversed. We affirm the district court's decision.
 
 I.
 
 3
 The parties are aware of the facts and the prior proceedings so we do not recite them here.
 
 II.
 
 4
 "Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision." Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). We review questions of law de novo, and findings of fact under the clearly erroneous standard. Id.; Bankr.R. 8013. Interpretations of state law are reviewed under the same de novo standard as are questions of federal law. Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 759 (9th Cir.), cert. denied, 113 S.Ct. 300 (1992).
 
 III.
 
 5
 Appellants frame this case as an application of the parol evidence rule to an ambiguous contract. Appellants argue that the contract was ambiguous, that the bankruptcy court therefore properly considered extrinsic evidence in arriving at its interpretation of the contract, and that the bankruptcy court's interpretation is supportable under the clearly erroneous standard.
 
 
 6
 Appellants first argued this theory in their petition for rehearing filed in the district court, and they concede in their briefs that the issue of ambiguity was not argued before or decided by the bankruptcy court. California law (which governs the letter agreements at issue) treats the parol evidence rule as an issue of substantive law which can be argued for the first time on appeal. Tahoe National Bank v. Phillips, 4 Cal.3d 11, 21-24, 480 P.2d 320, 92 Cal.Rptr. 704 (1971). The district court refused to consider extrinsic evidence in reaching its conclusion that Bank of the West did not have an obligation to pay $200,000.
 
 
 7
 "[T]he parol evidence rule, with certain exception, prohibits the introduction of any extrinsic evidence, oral or written, to vary or add to the terms of an integrated written instrument." City and County of San Francisco v. City Investment Corp., 15 Cal.App.3d 1031, 1038, 93 Cal.Rptr. 690 (1971). This rule is codified at Cal.Civ.Proc.Code Sec. 1856.
 
 
 8
 The Appellants further argue (1) that the December 27 letter was not an integrated agreement, (2) that the December 27 letter can only be understood by considering the December 15 letter, and (3) that considered together there is ambiguity about the Banks' obligations requiring resort to extrinsic evidence.
 
 
 9
 The district court did not rule explicitly on the issue of integration. The district court apparently relied on both the December 15 and the December 27 letters in arriving at its interpretation of the agreement. Bank of the West, on the other hand, urges us to find that the December 27 letter agreement was fully integrated.
 
 
 10
 Whether the December 27 letter was a final expression of the parties' agreement, i.e., a fully integrated contract, is a question of law. Alling v. Universal Manufacturing Corp., 5 Cal.App.4th 1412, 1434, 7 Cal.Rptr.2d 718 (1992); Cal.Civ.Proc.Code Sec. 1856(d). California has expressly rejected the "face of the document" test for integration (Masterson v. Sine, 68 Cal.2d 222, 226, 436 P.2d 561, 65 Cal.Rptr. 545 (1968)) and allows the introduction of "[e]vidence of surrounding circumstances and prior negotiations" for the limited purpose of determining whether the contract "was intended to be the final agreement of the parties superseding all other transactions." Alling v. Universal Manufacturing Corp., 5 Cal.App.4th 1412, 1434, 7 Cal.Rptr.2d 218 (1992). We therefore examine the extrinsic evidence presented by the parties of prior negotiations and the circumstances surrounding the letter agreements for the limited purpose of determining whether the December 27 letter was intended to be the final expression of the parties intentions with regard to the settlement of the mechanics' liens.
 
 
 11
 Appellants refer us to the December 15 letter. The December 27 letter, however, explicitly merges the December 15 letter.
 
 
 12
 5) Domain agrees that this letter [the December 27 letter] shall provide the terms upon which Banks shall fulfill their obligations to Domain pursuant to paragraph 5 of the Bank Letter [the December 15 letter] and that Banks shall have no further obligation to release their lien with respect to the AMC sale proceeds pursuant to said paragraph 5 other than as herein provided.
 
 
 13
 Appellants contend that because this merger clause only deals with the Banks obligations to Domain, and not the Auerbachs or Transamerica, that the December 27 letter is not a final expression of all parties' intentions. The Auerbachs and Transamerica, however, were not parties to the December 15 letter agreement. The merger clause appropriately did not refer to the Auerbachs or Transamerica.
 
 
 14
 Appellants ask us to consider evidence of subsequent conduct to counter Bank of the West's argument that the contract is integrated, citing California Code of Civil Procedure Sec. 1856(c).[1] But Section 1856(c) does not apply to evidence used to determine integration, but to evidence used to aid interpretation of a fully integrated agreement. See Cal.Civ.Proc.Code Sec. 1856, "Law Revision Commission Comment 1978 Amendment" at 30 (West 1983). We decline to consider subsequent conduct of the parties to determine the issue of integration.
 
 
 15
 The December 27 letter was signed by each of the parties' attorneys. Unlike the December 15 letter's brief discussion of the need to resolve the mechanics' liens, the December 27 letter established a detailed funding process to resolve the mechanics' liens. The December 27 letter carefully assigns the obligations of each party respecting the process of settling the liens. Unlike the December 15 letter, the December 27 letter deals in detail with such problems as attorneys' fees and administrative costs. It uses a merger clause to explicitly deal with the obligations of Domain and the Banks regarding the mechanics' liens which had been cursorily established by the December 15 letter. Nothing in the document suggests that it is not fully integrated, and Appellants have provided no evidence of dealings prior to or contemporaneous with the December 27 agreement to indicate that it is not fully integrated. We therefore conclude that the December 27 is letter a fully integrated document.
 
 IV.
 
 16
 Even if a contract is integrated, parol evidence may be admitted (1) to challenge the validity of the contract (see, e.g., Rothstein v. Janss Investment Corp., 45 Cal.App.2d 64, 68, 113 P.2d 465 (1941); Cal.Civ.Proc.Code Sec. 1856(e), (f), & (g)), (2) to aid in interpretation of ambiguities (see, e.g., Pistone v. Superior Court, 228 Cal.App.3d 672, 680, 279 Cal.Rptr. 173 (1991) (latent ambiguity); Walter E. Heller Western v. Tecrim Corp., 196 Cal.App.3d 149, 158, 241 Cal.Rptr. 677 (1987) (patent ambiguity); Cal.Civ.Proc.Code Sec. 1856(g)), (3) to establish that the parties have modified the original agreement (see, e.g., Grant v. Aerodraulics Co., 91 Cal.App.2d 68, 74, 204 P.2d 683 (1949) (recision); McKeon v. Giusto, 44 Cal.2d 152, 156, 280 P.2d 782 (1955) (novation); Cal.Civ.Proc.Code Sec. 1856(c)), or (4) to evidence a consistent collateral agreement. See, e.g., Skone v. Quanco Farms, 261 Cal.App.2d 237, 243, 68 Cal.Rptr. 26 (1968). Appellants have not challenged the validity of the contract.
 
 V.
 
 17
 Ambiguity is a question of law (see, e.g., Schmidt v. Macco Construction Co., 119 Cal.App.2d 717, 730, 260 P.2d 230 (1953)) which we review de novo. Bankr.R. 8013.
 
 
 18
 "It is a settled rule that when the language employed is fairly susceptible of either one of two construction contended for without doing violence to its usual and ordinary import an ambiguity arises where extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties." Silver v. Beverly Hills National Bank, 253 Cal.App.2d 1000, 1007, 61 Cal.Rptr. 751 (1967) (quoting Balfour v. Fresno Canal & Irrigation Co., 109 Cal. 221, 41 P. 876 (1895)). Appellants truncate this rule to argue that because they now argue for an interpretation at odds with that of the Banks that there is ambiguity. But as Silver states, there is only ambiguity when each of the contending interpretations is reasonable, and each does not do violence to usual and ordinary understanding of the text. Even California's linguistically skeptical Justice Traynor wrote that "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract." Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 39, 442 P.2d 641 (1968).
 
 
 19
 The parties agree that the intention of the agreement was resolve the mechanics' liens which were holding up the bankruptcy sale of Domain's leasehold. What the Appellants complain of as "ambiguity" appears to be a complaint that the Banks' generosity had a time limit. Although the Banks agreed to help resolve the mechanics' liens by accepting a smaller payment on their one-year note from AMC, Appellants now wish that the Banks had also agreed to advance cash to help resolve the liens once that note matured. Appellants contend for a construction of the December 27 letter which alters the ordinary import of the existing text by requiring an additional term which does not appear in the agreement. It is true that "[i]f necessary to carry out the intention of a contract, words may be transposed, rejected, or supplied to make its meaning more clear." Heidlebaugh v. Miller, 126 Cal.App.2d 35, 38, 271 P.2d 557 (1954). But the written terms of the contract already satisfy the intention of the parties to resolve the mechanics' liens in order to effectuate a sale. We conclude that this agreement was not ambiguous.[2]
 
 VI.
 
 20
 Because the Appellants in effect seek to add terms to an unambiguous integrated agreement we consider the issues of consistent collateral agreement and modification, even though the Appellants have not explicitly argued those positions in their submissions. The bankruptcy court could possibly have considered extrinsic evidence in order to establish existence of a consistent collateral agreement, or modification of the original agreement. But this collateral or modified agreement would have had to have been quite detailed and specific. Stated succinctly, the agreement would have to provide that in the event that notice had been given of lien resolution after exhaustion of the lien resolution escrow fund,[3] and following AMC's payment of the note, that the Banks would then be obligated either to replenish the escrow fund with cash or to reimburse Transamerica and/or Domain directly for the judgment costs, settlement costs, and reasonable fees and costs associated with settlement or litigation of the mechanics' liens.
 
 
 21
 The subsequent conduct of the parties provides no support for such a modified or collateral agreement. The Appellants point to Andrea Porter's unanswered letter to an attorney for Bank of the West, and subsequent promises by the Bank to fulfill prior obligations. These actions indicate stonewalling or confusion, but we cannot plausibly infer from this evidence any detailed agreement which complements or modifies the detailed funding scheme established in writing by the parties' attorneys in the December 27 letter.
 
 VII.
 
 22
 We give full effect to the December 27 letter. It established a careful process for resolving the mechanics' liens which were holding up a sale of Domain's leasehold. That process required those charged with responsibility for resolving the liens (Transamerica and Domain) to notify the purchaser of the property (AMC) who could advance funds to the lien resolution escrow account, and thereby reduce the amount of the note assigned to the Banks up to $200,000. This kept the Banks out of the process except that for a limited time they agreed to a reduction of their proceeds from the note. There is nothing ambiguous, and indeed nothing unfair, about having the Banks' obligations expire with redemption of the note.
 
 VIII.
 
 23
 Because the banks face no liability under their fully integrated agreement we need not address the issue of joint and several liability.
 
 IX.
 
 24
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 CANBY, Circuit Judge, dissenting:
 
 25
 I would reverse the decision of the district court and would reinstate the decision of the bankruptcy court. In my view, the bankruptcy court effectuated the intent of the parties to the December 15 and December 27 letters.
 
 
 26
 The December 15 letter provides that, in the event the escrow fund is insufficient to settle the mechanics' lien claims, the Banks "shall release to Domain from their lien proceeds" the necessary sums, subject to a limit. This provision can be read as applying to "lien proceeds" either before or after those proceeds are paid to the Banks.
 
 
 27
 The December 27 letter states that "Domain agrees that this letter shall provide the terms upon which Banks shall fulfill their obligations to Domain pursuant to paragraph 5 of the [December 15] Bank letter." The majority views this clause as causing a merger, but, with all respect, I do not. The clause does not state that Domain agrees that the December 27 letter "states the full extent of the Banks' obligation" under the December 15 letter; it simply provides the "terms" of fulfilling the earlier-stated obligation.
 
 
 28
 The next clause of the December 27 letter states that the "Banks shall have no further obligation to release their lien with respect to the AMC sale proceeds pursuant to said paragraph 5 [of the December 15 letter] other than as herein provided." But this clause is confined to the Banks' obligation to "release their lien"; it does not say that the Banks shall have no further obligation to pay for settlement of the mechanics liens. There is, of course, no need to release the lien here; there is only a need for the Banks to pay some of the lien proceeds to reimburse Transamerica (via Domain) for its settlement of the mechanics liens. The December 15 obligation thus remains.
 
 
 29
 I agree that the above interpretations of the December 27 letter are extremely narrow and technical. But they are not linguistically impossible interpretations. And they make far more sense out of the parties' agreement than the contrary interpretation. The ultimate question in this case is whose pocket did the parties intend the extra $200,000 to come from. The bankruptcy court correctly determined that the answer was "the Banks' pocket." The contract permits such an interpretation of the parties' intent. I would therefore reinstate the decision of the bankruptcy court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 1856(c) reads: "The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance."
 
 
 [2]
 Appellants cite Davies Machine Co. v. Pine Mountain Club, Inc., 39 Cal.App.3d 18, 26 (1974) and Crestview Cemetery Association v. Dieden, 54 Cal.2d 744, 754 (1960) for the proposition that subsequent conduct is admissible to demonstrate the meaning of the agreement. These cases, however, are inapposite as they do not deal with ambiguity, but with modification which is discussed infra
 
 
 [3]
 The agreement's notice provisions are important, but following maturity of the note it would be odd for the parties to notify AMC of resolution costs. Since the agreement has no notice provision for the Banks, such an additional term would also have to be added. This is a further indication that the Banks' role in the resolution of the liens was passive