# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOUIS A. PERRETTA, JR.; FRANK
PERRETTA,

      *Plaintiffs-Appellants,*

      v.

PROMETHEUS DEVELOPMENT
COMPANY, INC.; SANFORD N.
DILLER,

      *Defendants-Appellees.*

No. 06-15526

D.C. No.
CV-05-02987-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
February 11, 2008—San Francisco, California

Filed March 27, 2008

Before: David R. Thompson and Milan D. Smith, Jr.,
Circuit Judges, and William Q. Hayes,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable William Q. Hayes, United States District Judge for the
Southern District of California, sitting by designation.

**COUNSEL**

Bruce Adelstein, Los Angeles, California, for the plaintiffs-appellants.

Richard P. Tricker, Anderson, McPharlin & Conners, Los Angeles, California; Steffen Johnson, Winston & Strawn, Washington, DC, for the defendants-appellees.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

This action for breach of fiduciary duty requires us to decide what vote of the limited partners of a California limited partnership is necessary to ratify a self-interested transaction proposed by the partnership's general partner. We hold that only the partnership agreement may vary the unanimous ratification requirement of California law, and that it would be "manifestly unreasonable" for a partnership agreement to include votes cast by an interested general partner or its affiliates in a ratification vote. We reverse the decision of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Prometheus Income Partners, LP (Partnership) was a California limited partnership, organized to manage two large apartment complexes in Santa Clara, California.[1] Its general partner was Defendant-Appellee Prometheus Development Co., Inc. (PDC), a California corporation. PDC is 100%-owned by the DNS Trust, a trust effectively controlled by Defendant-Appellee Sanford N. Diller (Diller), who is also PDC's sole director, President, and CFO. Plaintiffs-Appellants Louis and Frank Perretta (Plaintiffs) were limited

---

[1]All facts, unless otherwise stated, are taken from the FAC, the Proxy Statement, or the Partnership Agreement (as those terms are defined in this opinion). Judicial notice of the Proxy Statement (including the appended Partnership Agreement) is proper on a Rule 12(b)(6) motion because Plaintiffs cited it in their FAC, thereby incorporating it by reference. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (holding SEC filings "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" to have been incorporated by reference) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). On appeal, Plaintiffs do not take issue with the district court's decision to take notice of the Proxy Statement, and cite to it themselves in their briefs.

partners in the Partnership, and are suing as representatives of the class of limited partners.[2]

In late 2000, PDC notified the limited partners that it was contemplating a transaction (Merger) whereby the Partnership would be merged into PIP Partners-General, LLC (PIP Partners), an entity owned by the DNS Trust and Diller's daughter, and which owned approximately 18.2% of the limited partnership units in the Partnership. PDC's initial proposal offered consideration of $1,200 per partnership unit, but in March 2002 the consideration was increased to $1,714 per unit, and later increased again to $1,736 per unit.

On June 13, 2002, PDC issued a proxy statement to the limited partners (Proxy Statement) describing the terms of the proposed Merger and soliciting the proxy of limited partners to approve the Merger. In the Proxy Statement, PDC stated that PIP Partners would "vote neutrally with respect to the merger proposal, meaning that PIP Partners will vote its units for or against the proposal in the same proportion as the total number of units voted by unaffiliated partners." The Proxy Statement noted several times that the interests of PDC and its affiliates were adverse to those of the limited partners unaffiliated with PDC.

In July 2002, the limited partners of the Partnership voted. Of the 18,995 limited partnership units outstanding, 9,630.73, or 50.7%, were voted to approve the Merger. This total included 2,487.23 votes owned by PIP Partners, the affiliate of the defendants. The unaffiliated limited partners cast 7,143.5 votes in favor (46.0% of the total unaffiliated limited partner votes), 2,248 votes against, and 320 votes expressly abstaining. Limited partners holding 5,832.5 units, or 37.5%

---

[2]The class is defined as those "persons and entities . . . who held limited partnership units in the Partnership as of the date the Merger transaction closed," but excluding those who are parties to a related non-class action lawsuit in state court.

of the unaffiliated limited partner votes, did not vote in person or return a proxy.[3] Thus, 73.6% of the total partnership units owned by unaffiliated limited partners were actually voted, but only a plurality of 46.0% of those units were voted to approve the Merger. If the limited partnership votes of PDC's affiliate, PIP Partners, were not counted, an absolute majority of votes in favor of the Merger would not have been achieved. According to the Second Amended and Restated Limited Partnership Agreement of the Partnership (Partnership Agreement), an absolute majority of limited partner interests entitled to vote was necessary to approve the merger.[4]

In July 2005, Plaintiffs filed a class action complaint in the district court against PDC, Diller, and two other officers of PDC. The defendants filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. In their brief opposing the motion, Plaintiffs stated: "Plaintiffs do not dispute that a majority of the unaffiliated limited partners voted in favor of the merger. Rather, the gravamen of their lawsuit is that they were induced to do so by statements in proxy materials that were deliberately false and misleading."

The district court granted the defendant's motion to dismiss the complaint, with leave to amend. Citing Plaintiffs' admission that a majority of unaffiliated limited partners had voted to ratify the Merger, the district court stated that the limited partners' ratification of the Merger would only be disregarded

---

[3]These totals appear in defendants' Reply in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint, and appear to have been accepted by both parties in their briefs before this court.

[4]The Partnership Agreement states that "Limited Partners shall have the right, by Majority Vote to take the following actions: . . . Dissolve and wind up the Partnership." "Majority Vote," in turn, is defined as "the vote of Limited Partners who are entitled to vote, consent or act and are holders of record of a majority of the outstanding Units." *See also* Cal. Corp. Code § 15678.2(a) (requiring "a majority in interest of each class of limited partnerships of each constituent limited partnership" to approve an agreement of merger).

if PDC's disclosure in the Proxy Statement were properly alleged to be fraudulent. The district court held that Plaintiffs had not previously done so with the specificity required by Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud . . . shall be stated with particularity."

In January 2006, Plaintiffs filed a First Amended Complaint (FAC). The FAC named only PDC and Diller as defendants. The Plaintiffs alleged, among other things, that the ratification was ineffective because PDC failed to properly disclose eight material matters to the limited partners in the Proxy Statement. It omitted the allegation that a majority of unaffiliated partners had approved the Merger, and noted that if PIP Partners "had simply abstained from voting, the Merger would not have been approved."

PDC and Diller moved to dismiss the FAC, and included the vote totals summarized above in their moving papers. The district court granted the motion to dismiss without leave to amend because it believed that any further amendment would be futile. The district court held that the vote ratified the Merger because a majority of the *voting* unaffiliated limited partners voted for the Merger, even if they did not make up a majority of all unaffiliated limited partners *entitled to vote*. Alternatively, the district court held that Plaintiffs were "in any event" judicially estopped to deny that a majority of unaffiliated limited partners approved the Merger, notwithstanding defendants' subsequent statement to the contrary. Finally, the district court ruled that the FAC still did not plead circumstances constituting fraud in the Proxy Statement with sufficient particularity to satisfy the requirements of Rule 9 (b). Plaintiffs appealed.

## STANDARD OF REVIEW AND JURISDICTION

We review de novo dismissals under Federal Rule of Civil Procedure 12(b)(6). *Sanders v. Brown*, 504 F.3d 903, 910 (9th

Cir. 2007). "All allegations of fact are taken as true. Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Id.* (citations omitted). In their complaint, Plaintiffs must aver "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1987 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1968.

We have jurisdiction to review the final decisions of the district court under 28 U.S.C. § 1291.

## DISCUSSION

## A. A General Partner's Duty of Loyalty Under California Law

[1] Under California law, the general partner of a limited partnership has the same fiduciary duties as a partner in any other partnership. Cal. Corp. Code § 15616(b). "The fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subdivisions (b) and (c)." Cal. Corp. Code § 16404(a). Subdivision (b) of the statute, in relevant part, states:

> (b) A partner's duty of loyalty to the partnership and the other partners includes all of the following:
>
> > (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity.

(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership.

*Id.* § 16404(b). "A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his copartner for his share of the prospective business opportunity." *Leff v. Gunter*, 658 P.2d 740, 745 (Cal. 1983) (quoting *Page v. Page*, 359 P.2d 41, 44 (Cal. 1961)). In the FAC, the Plaintiffs allege that the Merger constituted a self-dealing transaction which violated PDC's duty of loyalty by setting an "unfairly low price."[5]

**[2]** However, not all self-interested transactions violate the duty of loyalty. "A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." Cal. Corp. Code § 16404(e). The question is not whether the interested partner is *benefitted*, but whether the partnership or the other partners are *harmed*. "Partnership is a fiduciary relationship, and partners may not take advantages for themselves *at the expense of the partnership*." *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1540 (2003) (emphasis added). "There is an obvious and essential unfairness in one partner's attempted exploitation of a partnership opportunity for his own personal benefit and to the resulting detriment of his copartners." *Leff*, 658 P.2d at 744. "Thus, a partner who seeks a business advantage over another partner bears the burden of showing complete good faith and fairness to the other." *Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 424 (2003).

---

[5]Because this transaction involves self-dealing, PDC's argument that we ought to defer to its decision under the business judgment rule is unfounded. *See Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 429-30 (2003) ("The business judgment rule does not shield actions taken . . . as a result of a conflict of interest.").

**[3]** One way a self-interested partner may meet this burden is to have disinterested partners ratify its actions. The doctrine of shareholder ratification is well known in the corporate context. However, the only California case specifically addressing ratification in a *partnership* context is *Skone v. Quanco Farms*, 261 Cal. App. 2d 237 (1968). In *Skone,* the court held:

> there is no breach of a fiduciary duty if there has been a full and complete disclosure, if the partner who deals with partnership property first discloses all of the facts surrounding the transaction to the other partners and secures their approval and consent. In fact, it would be incongruous to hold that a partner who consented to a partnership transaction, with full knowledge of all the facts, may later complain and seek damages against the other partner simply because he benefitted by the transaction.

*Id.* at 241 (citations and footnotes omitted). California statutory law expressly provides for ratification by a partnership: "All of the partners or a number or percentage specified in the partnership agreement may authorize or ratify, after full disclosure of all material facts, a specific act or transaction that otherwise would violate the duty of loyalty." Cal. Corp. Code § 16103(b)(3)(B). The language of both *Skone* and Cal. Corp. Code § 16103(b)(3)(B) indicates that, upon a showing of proper ratification by the partners, any claim against the partner for a violation of the duty of loyalty is extinguished. Thus, we must determine whether any potential claim Plaintiffs might have for breach of the duty of loyalty was extinguished by a valid ratification of the Merger under Cal. Corp. Code § 16103(b)(3)(B).

## B. Were Plaintiffs Judicially Estopped to Deny a Ratification of the Merger?

Before analyzing other aspects of the ratification question, we address the district court's holding that Plaintiffs were

judicially estopped to argue that the Merger vote was insufficient because of a representation made by Plaintiffs in their opposition to defendant's motion to dismiss the original complaint. In Plaintiffs' brief in opposition, they wrote: "Plaintiffs do not dispute that a majority of the unaffiliated limited partners voted in favor of the merger. Rather, the gravamen of their lawsuit is that they were induced to do so by statements in proxy materials that were deliberately false and misleading." Plaintiffs now characterize this as a "misstatement of counsel": what they meant to say was that they did not dispute that a majority of *all* limited partners—interested *and* disinterested—had approved the merger.

**[4]** "Judicial estoppel, also known as 'preclusion of inconsistent positions,' prohibits a litigant from asserting inconsistent positions in the same litigation." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 917 (9th Cir. 2001). The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). The Supreme Court has identified three factors that "typically inform the decision whether to apply the doctrine in a particular case": (1) whether the two positions are "clearly inconsistent," (2) whether the party was successful in asserting the earlier position, and (3) whether the party seeking to assert the position would derive an unfair advantage or impose an unfair detriment upon the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). We review the decision whether to invoke judicial estoppel for an abuse of discretion. *United States v. Ruiz*, 73 F.3d 949, 953 (9th Cir. 1996).

**[5]** In this case, we hold that the district court abused its discretion by invoking judicial estoppel. First, it is not obvious that the positions are clearly inconsistent, but we will concede that they are for purposes of this analysis. However, the second factor, success on the prior position, is entirely absent here. "Absent success in a prior proceeding, a party's later

inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *New Hampshire*, 532 U.S. at 750-51 (citation and quotation marks omitted). In this case, Plaintiffs lost the very motion they were arguing, and it is difficult to see what advantage they might have derived from the apparent concession even then. The third factor, unfair prejudice to the opposing party, appears to be absent as well—the tally of votes cited above are drawn from *Defendants*' Reply in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint and, on appeal, have been accepted by both parties as true.

Plaintiffs' explanation for the apparent change in position —that it merely reflects a misstatement, rather than a tactic— is also plausible. While plausibility is not one of the three *New Hampshire* factors, those factors were not meant to be exhaustive, and the text of *New Hampshire* itself lends support to the idea that it should be taken into account. *See id.* at 749 (quoting 18 Charles Wright, et al., *Federal Practice and Procedure* § 4477 at 782 (1981) ("*absent any good explanation*, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory") (emphasis added)).

Finally, in this case, the district court noted, in justifying the holding of estoppel, that "the proxy materials indicated that the facts about the vote could not have been as plaintiffs allege." It is not clear what the Proxy Statement, which *preceded* the vote, has to do with the factual matter of the final vote tally. At any rate (as shown below), it was the district court, not the Plaintiffs, that was mistaken about the importance of the Proxy Statement in determining how the outcome of the vote was to be determined. "An abuse of discretion occurs if the district court based its decision on an erroneous legal conclusion or a clearly erroneous finding of fact." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2000) (quotation marks and citation omitted).

**[6]** We hold that the Plaintiffs are not judicially estopped from contesting the effectiveness of the ratification of the vote on the Merger.

## C. What Constitutes a "Majority Vote"?

The district court also held that the Merger was effective because it was approved by limited partners holding 73.5% of the units actually voted. It further ruled that those limited partners who did not vote were not to be included in the calculation. The district court based its determination on the rules for counting votes set forth in the Proxy Statement. However, California law and the Partnership Agreement govern how the outcome of the vote is to be determined, not the proxy materials.

**[7]** Cal. Corp. Code § 16103(b)(3)(B) states: "*All of the partners* or *a number or percentage specified in the partnership agreement* may authorize or ratify, after full disclosure of all material facts, a specific act or transaction that otherwise would violate the duty of loyalty." (Emphasis added). In *Skone*, the partnership had only two partners. The ratification of the one partner's actions by the other was, therefore, a unanimous one. 261 Cal. App. 2d at 241. By contrast, this case involves a limited partnership with approximately 1,000 partners. Nothing in the statute, however, varies the unanimity requirement in a general partnership based on the number of partners, and neither does the California Revised Limited Partnership Act (Act), which also applies in this case, provide a different default rule for ratification when limited partnerships are at issue. The Act commands that, unless otherwise provided, "limited partnerships shall be governed in the same manner as general partnerships would be governed." Cal. Corp. Code § 15722.

**[8]** Moreover, the Act specifies that only "the partnership agreement" can vary the unanimity requirement and require a lesser number of partners necessary to ratify a violation of the

duty of loyalty. The district court observed that the Proxy Statement, drafted by PDC and sent out shortly before the vote, purported to set forth what vote was required to approve the Merger, and in places stated that non-votes would not be considered.[6] But no references to proxy statements appear in § 16103(b)(3)(B), and for good reason: allowing the general partner (which, after all, drafted the Proxy Statement) to unilaterally adopt ad hoc rules to ratify its own self-interested transaction would undermine the very purpose of ratification —allowing the limited partners to protect themselves. Only the Partnership Agreement, which the limited partners agreed to upon joining the Partnership, can vary the statutory requirement for what vote is required to ratify.

[9] The Partnership Agreement, unfortunately, does not expressly mention the duty of loyalty or ratification; neither does it address limited partner votes in the presence of a conflicted general partner. Rather, it states, in relevant part, that "Limited Partners shall have the right, by Majority Vote to . . . [d]issolve and wind up the Partnership." "Majority Vote," in turn, is defined as "the vote of Limited Partners who are entitled to vote, consent or act and are holders of record of a majority of the outstanding Units." Nowhere does the Partnership Agreement distinguish between interested and disinterested votes—even in areas where the general partner would almost always have a conflict of interest. For example, a "Majority Vote" is required to permit the general partner to perform a number of otherwise restricted activities—including

---

[6]We note that the Proxy Statement was itself inconsistent with respect to the effect of non-votes on the election. In the body of the Statement, under the heading "Vote Required," it warns: "If you fail to return your proxy and do not vote in person at the meeting, as a result of the agreement of PIP Partners to vote as have the voting limited partners, the effect on the merger proposal will depend on how other limited partners vote." Earlier, however, in a Q&A summary section, it states: "If you fail to return your proxy or mark 'ABSTAIN' on your proxy, the effect will be the same as a vote against the merger proposal."

selling the Partnership's properties to itself or comingling its funds with that of the Partnership.[7]

[10] The lack of any reference in the Partnership Agreement's voting provisions to duties of loyalty or conflicts of interest militates in favor of construing the Partnership Agreement's voting provisions narrowly to involve only the juridical effectiveness of the Merger pursuant to Cal. Corp. Code § 15678.2,[8] not to effect ratification under Cal. Corp. Code § 16103(b)(3)(B). Following that approach, the Partnership Agreement has not varied the unanimous ratification rule, and the ratification fails. However, we do not so construe the Partnership Agreement. The fact that a Majority Vote is required to approve certain potentially conflicted actions of the general partner makes clear that the Majority Vote is intended to be the principal way for limited partners to protect themselves against adverse actions of the general partner. The Majority Vote explicitly acts as an "approval and consent" of the issue under consideration, which is the requirement for ratification under *Skone*. 261 Cal. App. 2d at 241.

---

[7]The Partnership Agreement permits the general partner to own limited partnership units. It therefore necessarily contemplates the possibility that certain limited partner units will be subject to a conflict of interest in the event a Majority Vote is required.

[8]Cal. Corp. Code § 15678.2(a) provides, in relevant part:

> The agreement of merger shall be approved by all general partners of each constituent limited partnership and the principal terms of the merger shall be approved by a majority in interest of each class of limited partnerships of each constituent limited partnership, unless a greater approval is required by the partnership agreement of the constituent limited partnership.

The Plaintiffs' action here is one against the general partner for breach of fiduciary duty, not one seeking rescission of the Merger, *see* Cal. Corp. Code § 15679.14(e) (distinguishing between "action[s] for breach of fiduciary obligation" and those "to attack the validity of the reorganization or to have the reorganization set aside or rescinded"), and Plaintiffs expressly disclaim any attack on the Merger's juridical effectiveness. We therefore decline to rule on the validity of the Merger here.

**[11]** We thus look to the Partnership Agreement's definition of "Majority Vote" to determine what vote is necessary to ratify the Merger. While PDC contends that only a majority of disinterested shareholders actually voting was required to effect ratification, the Partnership Agreement's definition of "Majority Vote" expressly requires a "majority of the outstanding Units"—making no distinction whether the Units are voted or not. Those who failed to cast their vote must, therefore, be included in the denominator of any vote total.

## D. "Manifestly Unreasonable"

Since the voting provisions of the Partnership Agreement do not forbid the limited partners from ratifying the actions of an interested general partner, the plain language of the Partnership Agreement places no limit on the ability of an interested general partner to participate in ratifying its own self-interested transactions. However, in this case, PDC requires interested limited partner votes to ratify since only 46% of total unaffiliated units voted "yes" to the Merger.

**[12]** California law permits a partnership agreement to vary or permit ratifications of violations of the duty of loyalty only if the provision doing so is "not manifestly unreasonable." Cal. Corp. Code § 16103(b)(3).[9] Thus, we are required to

---

[9]California's Uniform Partnership Act of 1994 reads, in relevant part:

The partnership agreement may not do any of the following:

* * *

(3) Eliminate the duty of loyalty under subdivision (b) of Section 16404 or paragraph (3) of subdivision (b) of Section 16603, but, *if not manifestly unreasonable*, may do either of the following:

(A) The partnership agreement may identify specific types or categories of activities that do not violate the duty of loyalty.

(B) All of the partners or a number or percentage specified in the partnership agreement may authorize or ratify,

determine whether a provision that allows an interested part-
ner to count its votes in the total required for ratification is
"manifestly unreasonable."

There is some authority suggesting that such a provision
might not be manifestly unreasonable. In particular, a com-
ment to the 2001 Uniform Limited Partnership Act,[10] explain-
ing the provision allowing ratification upon a specified vote
of the limited partners, notes: "The Act does not require that
the authorization or ratification be by *disinterested* partners,
although the partnership agreement may so provide. . . ." It
may be argued, then, that in the context of a large limited
partnership, such a provision might not be "manifestly unrea-
sonable."

We disagree. We begin with the proposition that California
has a strong public policy against self-interested transactions
by fiduciaries, especially in cases involving changes of orga-
nizational control:

> Self-dealing in whatever form it occurs should be
> handled with rough hands for what it is—dishonest

---

after full disclosure of all material facts, a specific act or
transaction that otherwise would violate the duty of loy-
alty.

Cal. Corp. Code § 16103(b) (emphasis added). California's language in
this section differs from its analogue in the Uniform Partnership Act of
1994, which locates the "if not manifestly unreasonable" clause in sub-
paragraph (A). *See* Unif. Partnership Act of 1994 § 103(b)(3) (amended
1997). By moving the clause up, the California legislature clearly intended
that the "if not manifestly unreasonable" proviso extend to ratification pro-
visions of partnership agreements as well.

[10]California has adopted the 1976, not the 2001, version of the Uniform
Limited Partnership Act, *see* Cal. Corp. Code T.2, Ch. 3, Refs & Annos
(West 2006), and the comments to the Uniform Act are in any event not
binding law. The comments simply inform us what the National Confer-
ence of Commissioners on Uniform State Laws thought should not be
"manifestly unreasonable."

dealing. And while it is often difficult to discover self-dealing in mergers, consolidations, sale of all the assets or dissolution and liquidation, the difficulty makes it even more imperative that the search be thorough and relentless.

*Jones v. H. F. Ahmanson & Co.*, 460 P.2d 464, 473 (Cal. 1969). It is for this reason that self-interested transactions are denied the deference embodied in the business judgment rule, which ordinarily requires deference to the business decisions of managers of business enterprises. *See McNeil Partners*, 114 Cal. App. 4th at 429-30. To the extent ratification represents an exception to California's general policy of "thorough and relentless" scrutiny of self-dealing, we are confident that a California court would construe it narrowly, with particular skepticism toward any aspect that might hint of unfairness.

**[13]** California statutes in related areas of the law support the idea that interested partners should not be allowed to count their votes in a ratification vote. For example, in an action for rescission of the merger of a limited partnership, "a party to a reorganization which controls another party to a reorganization shall have the burden of proving that the transaction is just and reasonable as to the limited partners of the controlled party" unless "a majority in interest of the limited partners *other than limited partners who are directly or indirectly controlled by, or under common control with, another party to the reorganization* approve or consent to the reorganization." Cal. Corp. Code § 15679.14(c), (d) (emphasis added). We fail to see why the standard for ratification to extinguish a claim for violation of fiduciary duty should be any less than the standard for an action directly challenging the merger itself.

For California corporations, the applicable statute mandates that conflicted actions be ratified in elections "with the shares owned by the interested director or directors not being entitled to vote thereon." Cal. Corp. Code § 310(a)(1). That the rules

governing another organizational form expressly prohibits this sort of calculation provides further evidence that a California court would find it "manifestly unreasonable" in the partnership context as well, were the issue presented.

Finally, allowing an interested partner to participate in a ratification election subverts the very purpose of ratification itself. The Delaware Court of Chancery described that policy as follows:

> When unitholders have the contractual opportunity to protect themselves against an unfair vote simply by voting no, it would be paternalistic and inefficient for courts to exercise a supervening judgment to protect the unitholders from their own erroneous investment decision. It is at best highly doubtful the court is in a better position than unitholders to determine the economic utility of transactions put to them; moreover, it seems a misallocation of judicial resources to have courts reassess the fairness of transactions that minority unitholders could have blocked themselves.

*R.S.M. Inc. v. Alliance Capital Mgmt. Holdings L.P.*, 790 A.2d 478, 498 (Del. Ch. 2001) (footnote omitted).[11] Allowing an interested party to vote, however, only interferes with the unaffiliated partners' self-protection. The interested party has no need to "protect itself" from its own decision, and its contention that the decision also benefits the unaffiliated partners, unaccompanied by those partners' affirmative agreement, need not be taken at face value.

This is the case notwithstanding PIP Partners' attempt to "vote neutrally" by voting its units in the same proportion as the unaffiliated yes and no votes. PIP Partners' vote was man-

---

[11]In *R.S.M.*, the agreement of the partnership at issue *excluded* the interested party from ratification elections. *Id.* at 487, 497-98.

ifestly not "neutral," as it failed to account for those who failed to return their proxy.[12] In defining "Majority Vote" to mean an absolute majority of *all* those entitled to vote, rather than those who actually voted, the Partnership Agreement reflects a judgment that certain fundamental changes in the Partnership structure should be taken only with the affirmative approval of limited partners, rather than merely over their silence. PDC and the limited partners could have struck a different bargain, one closer to the philosophy reflected in the rule governing shareholder votes in California corporations (whose default rule counts only those votes cast, *see* Cal. Corp. Code § 153), and allowed ratification votes that do not count abstentions. Nothing in the Partnership Agreement as written, however, reflects such a bargain.

**[14]** We hold that a partnership agreement provision that allows an interested partner to count its votes in a ratification vote would be "manifestly unreasonable" within the meaning of Cal. Corp. Code § 16103(b)(3)(B). We therefore construe the Partnership Agreement as requiring a vote of the majority of the outstanding limited partner units owned by unaffiliated partners. *Cf.* Cal. Civ. Code § 1643 (requiring that a contract be interpreted in a manner "as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"). Because the vote obtained "yes" votes from only 46% of the outstanding units, the defendants have not shown a valid ratification, and the burden remains on them to "show[ ] complete good faith and fairness to the other" limited partners. *McNeil Partners*, 114 Cal. App. 4th at 424.

---

[12]A truly "neutral" vote would have allocated only 46% of PIP Partners' 3,451 votes in favor (with 39.5% of its votes abstaining or not voting). This would have yielded approximately 1,587.5 "yes" PIP Partners votes, which, added to the votes of unaffiliated limited partners voting yes, would have meant only 8,731 total "yes" votes. This would have been less than 50% of the 18,995 votes outstanding, and would have caused the vote to fail.

### E.   Disposition of Remaining Issues

Having concluded that the defendants have failed to demonstrate the existence of a valid ratification, we need not address whether Plaintiffs' allegations of fraud in the FAC meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Failure to make "full disclosure of all material facts" will ordinarily cause an otherwise valid ratification to be disregarded. Cal. Corp. Code § 16103(b)(3)(B); *see also Skone*, 261 Cal. App. 2d at 241 (allowing ratification only "if there has been a full and complete disclosure, if the partner who deals with partnership property first discloses all of the facts surrounding the transaction to the other partners and secures their approval and consent"). In this case, however, no ratification occurred. By averring that PDC set an "unfairly low" price, and alleging several specific ways in which the price was unfairly low (such as a purportedly unreasonable basis for calculating the consideration, improper deduction of various fees, and the use of an allegedly outdated appraisal), Plaintiffs have alleged enough facts to state a claim for which relief can be granted.

Defendants also argue that the judgment should be affirmed on grounds other than those cited by the district court. To the extent their arguments rely on Plaintiffs' allegations sounding in fraud, those arguments fail: the gravamen of Plaintiffs' claim is not fraud, but PDC's alleged breach of its fiduciary duty by imposing a self-dealing transaction, on unfair terms, without a valid ratification by disinterested limited partners.

We decline to rule on Defendants' argument that we should affirm as to Diller because he, as officer and beneficial owner of PDC, did not owe fiduciary duties directly to the Partnership. We leave this argument to the district court to rule on in the first instance, after further briefing.

Finally, we decline to rule on the preclusive effect, if any, of any subsequent judgments in parallel litigation conducted

in California state court over claims arising out of the Merger. This, too, is left to the district court on remand, to consider in light of our reversal of the prior federal judgment.

## CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.